## Case No. 17,755.

### WILLIAMSON v. RINGGOLD.

[4 Cranch, C. C. 39.] [1]

Circuit Court, District of Columbia. May Term, 1830.

REPLEVIN — WRONGFUL EXECUTION — TITLE OF PLAINTIFF—BURDEN OF PROOF—BILL OF SALE—FRAUD.

1. Replevin will lie for the goods of a stranger taken in execution as the goods of the debtor, if taken out of the actual or constructive possession of the plaintiff.
[Cited in Calvert v. Stewart, Case No. 2,327.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

2. Upon the plea of property in the defendant, the burden of proof is on the plaintiff.

3. An absolute bill of sale is fraudulent as to creditors, unless accompanied and followed by possession.

Replevin for the plaintiff's goods taken in execution by the defendant [Tench Ringgold], as marshal of the District of Columbia, at the suit of Thomas Carberry v. John Wells, Jr.

Mr. Morfit, for defendant, moved the court for a return of property, on the ground that it was in the custody of the law under a fieri facias against Wells at the suit of Thomas Carberry, and cited Cromwell v. Owings, 7 Har. & J. 55, 60, 61; Meany v. Head [Case No. 9,379]; Pritchard v. Stephens, 6 Term R. 522; Thompson v. Button, 14 Johns. 84; Mills v. Martin, 19 Johns. 7; Ilsley v. Stubbs, 5 Mass. 280; and 6 Com. Dig. 490.

Mr. Coxe, contra, cited Clark v. Skinner, 20 Johns. 465.

CRANCH, Chief Judge, delivered the opinion of the court.(THRUSTON, Circuit Judge, dissenting).

This is a replevin for the plaintiff's goods, taken on a fieri facias, against John Wells, Jr., at the suit of Thomas Carberry, issued out of this court. Mr. Morfit, for the defendant, has moved the court for a return of the goods under the act of assembly of Maryland, 1785, c. 80, § 14 (and also for a venditioni exponas), because the goods were, as it is said, in the custody of the law, and therefore could not lawfully be replevied, whether the plaintiff in replevin [James Williamson] was, or was not, the owner of the goods at the time of the taking, and whether they were taken by the marshal out of the actual possession of the plaintiff in replevin, or out of the actual possession of Wells, the debtor in the execution.

It is understood to be admitted in argument, that the goods were the property of the plaintiff in replevin, at the time of the taking by the defendant, and that the defendant took them to satisfy the execution against Wells. It is not stated whether they ever had been in the possession of the plaintiff, nor whether they were taken from the actual possession of Wells, or from the actual or constructive possession of the plaintiff. If the goods never had been in the possession of the plaintiff, they must be returned to the defendant under the act of assembly of 1785, c. 8, § 14, upon a retorno habendo bond being given by the defendant; for that act strongly implies that the return to the defendant is to be ordered of course, unless the defendant obtained the possession "forcibly or fraudulently"; or that the possession having been first in the plaintiff, "was got, or retained by the defendant, without proper authority or right derived from the plaintiff;" in which case the court is authorized "to refuse to order a return to

the defendant, until a judgment is given in the action." But, upon such return, when ordered, the defendant must give bond and security to restore the goods to the plaintiff, if such should be the judgment of the court. If, therefore, the plaintiff cannot show that the defendant took the goods out of his actual or constructive possession, the return must be ordered, of course, to the defendant. Cullum v. Bevans, 6 Har. & J. 471.

The motion for a return, upon the ground, that goods in the custody of the law are not to be replevied, is, in effect, a motion to quash the replevin; for if the return should be ordered, it must be without bond; and such an order would be of course, if the plaintiff in replevin were the debtor in the writ of fieri facias; for the law, in that respect, is well settled in this country as well as in England. But it is not well settled, either there or here, that a man cannot maintain replevin for his goods taken out of his actual or constructive possession by an officer, to satisfy an execution against a third person. In some of the states it is well settled that he can. But in Maryland, the court of appeals has lately delivered a solemn opinion, that he cannot, in the case of Cromwell v. Owings, 7 Har. & J. 60, 61. In England, it will be found that every case adduced in support of the rule, that replevin will not lie for goods in the custody of the law, are cases where the plaintiff in replevin was the debtor himself. It is said to be a rule founded upon the policy of the law; and the reason given by Gilbert on Replevins (161), in the very passage relied upon in support of the rule, is, that "it would be troubling the execution awarded, if the party on whom the money was to be levied should fetch back the goods by a replevin; and, therefore, they construe such endeavors to be a contempt of their jurisdiction; and upon that account commit the offender." Goods seized and held by a trespasser, cannot, surely, be said to be in custody of the law, except as against the trespasser himself, when they are seized in execution. The policy of the law refuses him the right to question the validity of the judgment, or to deny his interest in the property, by any means that would defeat or delay the execution; but it does not refuse a third person the means of protecting his rights from illegal violation. The general rule is, that replevin will lie wherever trespass will lie for taking the plaintiff's goods. There is, however, this difference between trespass and replevin, that trespass will lie upon possession alone; but replevin requires property in the plaintiff. All that is necessary to support the action, is property in the plaintiff, either general or special, and a wrongful taking from the plaintiff's possession, either actual or constructive. The idea suggested by Blackstone, and repeated by several other elementary writers, that replevin will only lie for goods taken by distress, has no foundation.

I have not found it supported by a single adjudged case. On the contrary, the cases are abundant, from the time of the Year Books to the present moment, in which replevin has been supported for goods not taken by distress. Blackstone (3 Comm. 145b) says: "The wrongful taking of goods being thus most clearly an injury, the next consideration is, what remedy the law of England has given for it. And this is, in the first place, the restitution of the goods themselves, so wrongfully taken, with damages for the loss sustained by such unjust invasion; which is effected by action of replevin." "This obtains only in one instance of an unlawful taking, that of a wrongful distress." For this assertion, he cites no authority whatever; and it is believed none can be found. Baron Gilbert, whose Treatise upon the Law of Replevins was published some years before Blackstone's Commentaries, defines the writ of replevin thus: "A replevin is a justicial writ to the sheriff, complaining of an unjust taking and detention of goods or chattels, commanding the sheriff to deliver back the same to the owner, upon security given to make out the injustice of such taking, or else to return the goods and chattels." Gilb. Repl. 58. 2 Sell. Prac. p. 153, following Blackstone, says: "Replevin is a remedy grounded upon a distress; for goods are only replevisable when they have been taken by way of distress." But he cites no authority, except Co. Litt. 145, which gives no countenance to such a doctrine. It only shows that replevin is the proper remedy in cases of distress for rent; but not that replevin will not lie for goods not distrained. On the contrary, Lord Coke says, that when the defendant claims property, although upon the plaint the sheriff cannot try the question, "yet the plaintiff may have a writ, de proprietate probanda, directed to the sheriff, to try the property; and if, thereupon, it be found for the plaintiff, then the sheriff to make deliverance, (for so be the words of the writ); and if for the defendant, he can no further proceed. But that is but an inquest of office; and, therefore, if thereby it be found against the plaintiff, yet he may have a writ of replevy to the sheriff; and if he return the claim of property, &c., yet it shall proceed in the court of common pleas, where the property shall be put in issue and finally tried." This passage shows, that replevin will lie to try the title to goods, which have been wrongfully taken from the possession of the plaintiff.

In the action of replevin, neither the writ nor the declaration says any thing of the goods being taken as a distress. The injury complained of is, that the defendant took and unjustly detains the plaintiff's goods, not that he took them for any particular purpose. In the case of Shannon v. Shannon, 1 Schoales & L. 327, Lord Redesdale says: "Mr. Justice Blackstone's definition of the action of replevin is certainly too

narrow. Many old authorities will be found (in the books) of replevin being brought where there was no distress." "It is an action founded on a taking, and the right which the party from whom the goods were taken has to have them restored to him, until the question of title to the goods is determined." In the case of Meany v. Head [Case No. 9,379], Mr. Justice Story said: "At common law, a writ of replevin never lies, unless there has been a tortious taking, either originally or by construction of law, by some act which makes the party a trespasser ab initio." In Ilsley v. Stubbs, 5 Mass. 283, Mr. Chief Justice Parsons said: "The defendant, to support his plea, has argued, that replevin at common law does not lie, unless where goods are taken by distress as a pledge. It is true, that anciently, replevin was generally sued out to replevy cattle taken by distress as a pledge; but, in fact, replevin lies for him, who has the general or special property in chattels, against him who has wrongfully taken them." So, in Shearick v. Huber, 6 Bin. 2, which was replevin against the purchaser of the plaintiff's goods, at the sheriff's sale, under a fieri facias against a stranger, Mr. Chief Justice Tilghman said: "No doubt but replevin is the proper form of action; for although, in England, this form of action has been generally confined to cases of goods distrained for rent, yet, with us, it has been used in all cases where chattels, in the possession of one person, have been claimed by another." So, in Woods v. Nixon, Add. 134, the president of the court of common pleas said: "The practice, in Pennsylvania, has been to issue replevin in all cases where a man claims property detained from him." So, in 2 Wheat. Selwyn, N. P. 896, Selwyn says, "that Blackstone's definition is too narrow;" and Mr. Wheaton, in his note, says, "that replevin lies for any tortious taking of goods from the possession of the plaintiff, and not in case of a distress only, is well settled in England, and has been recognized and adopted as sound doctrine, by the supreme court of New York." Dane, in his Abridgment (volume 5, p. 515), speaking of Blackstone's definition, says: "It has been truly observed, that this definition is too narrow." "The writ is founded on a taking, and the plaintiff's right to have the goods restored to him until the question of title to them is determined." And Daniel Dulany, in his opinion given in the year 1771, in the case of Coursey v. Wright, 1 Har. & McH. 396, says: "The case supposed, would exemplify the very definition of replevin; 'a remedy, provided by the law, for the specific recovery of personal property unjustly taken and detained;' though Blackstone says, very erroneously, that replevin is only in one instance of unlawful taking, that of a wrongful distress." In the case of Hopkins v. Hopkins, 10 Johns. 373, Mr. Chief Justice Kent said: "The action of replevin is grounded on a

tortious taking, and it sounds in damages, like an action of trespass, to which it is extremely analogous, if the sheriff has already made a return (of the goods) and the plaintiff goes only for damages for the caption." Comyns (Dig. "Replevin," A) says: "Replevin lies of all goods unlawfully taken." So, in the case of Pangburn v. Patridge, 7 Johns. 143, Mr. Justice Van Ness, in delivering the opinion of the supreme court of New York, said: "The opinion I expressed, on the trial of this cause, that replevin lies only in the case of an unlawful distress, was a mistaken one. The passage to that effect in Blackstone's Commentaries, is not warranted by the books. This action is usually brought to try the legality of a distress; but it will lie for any unlawful taking of a chattel. Possession by the plaintiff, and an actual, wrongful taking by the defendant, are the only points requisite to support the action; and none of the cases, defining the nature of the action, confine it specially to the case of a chattel taken under pretence of a distress. The old authorities are, that replevin lies for goods taken tortiously, or by a trespasser, and the party injured may have replevin or trespass, at his election. This is so laid down by Gascoigne, J., 7 Hen. IV. p. 28b; and by Danby, J., 2 Edw. IV. p. 16; and by Brian, J., 6 Hen. VII. g; and these dicta are cited as good law, in Brooke, Abr. tit. 'Replevin,' pls. 36, 39, and in Rolle, Abr. tit. 'Replevin,' B. The same rule was admitted by the judges in Le Mason v. Dixon, 1 W. Jones, 173, and in Bishop v. Montague, Cro. Eliz. 824. Similar language is held in many of the modern authorities, and particularly by Baron Gilbert, Baron Comyns, and Lord Redesdale. The opinion of the latter is reported by Schoales and Lefroy, in which he lays down the law with peculiar accuracy and precision." The case from 6 Hen. VII. p. 9, is thus stated by Brooke ("Replevin," pl. 36): "A man takes my goods as a trespasser, I may have replevin, although the trespasser has property by the tort, for this is of the property which I had at the time of the caption; but I cannot have detinue, for that is of the property which is in me at the time of the action brought. (Per Brian.)" The case from the Year Book, 7 Hen. IV. p. 28b, is abridged by Brooke, tit. "Replevin," pl. 15, where he says: "By some, replevin will not lie for beasts taken contra pacem; but, per Gascoigne, he may have replevin or trespass." The case from 2 Edw. IV. p. 16, is thus abridged by Brooke, tit. "Replevin," pl. 39: "Per Danby: When a trespasser takes my goods, I may have replevin, for I may affirm the property in me, or I may have trespass, and disaffirm the property. Note. That by him, where a man delivers his goods to W. N., and a stranger takes them, yet the bailor may give them to another, and the gift is good. Littleton, contra, for the property is in the stranger; and he said well, as it seems; and yet, that replevin lies, is good law, for

this is of the property which was in him at the time of caption; but in the other case, the property was not in him at the time of the gift." These cases are also cited by Rolle, in his Abridgment, tit. "Replevin," B, 2, as good law. He also says (tit. "Replevin," c. 1): "If the cattle of a man are manuring and agisting my land, levant et couchant, and are taken by strangers, I may have replevin. 42 Edw. III. p. 18; 21 Hen. VIII. p. 14b; 11 Hen. IV. p. 17, and 2 Edw. III. p. 44." The case of Leonard v. Stacy, 6 Mod. 68, was replevin for goods, of which the plaintiff had been cheated.

It is admitted, on all hands, that "property in the defendant," or even "in a stranger," is a good plea. It follows, therefore, that when the property is taken by the defendant, from the possession of the plaintiff, under the claim of title, replevin is the proper action to try that title. But the plaintiff in replevin cannot be supposed to know, beforehand, what pretence the defendant may set up as an excuse for the taking; and whether that excuse be true or not cannot be known until the trial, so that it cannot be said, in any case where the taking of the plaintiff's goods has been from the possession of the plaintiff himself, that replevin will not lie. It is true, that in many such cases of taking, replevin cannot be maintained, because, upon the trial, it may turn out that the taking was lawful; but still, in those cases, replevin is the proper action to try the lawfulness of the taking, and the court will not quash the writ before that question is decided, unless the writ shall have been issued under such circumstances as to be a contempt of the court. Gilb. Repl. 161. This happens when the improper interference of one of the parties in the cause obstructs the execution of the judgment of the court. In such a case, it is considered as a constructive contempt. The general rule, then, is clearly established, that replevin will lie for every wrongful taking of the plaintiff's goods out of his possession. But there is said to be an exception to this general rule, and that is, where the goods are in the custody of the law.

It may be well here to inquire, in what cases goods are said to be "in the custody of the law."

1. When cattle are justly seized for rent arrear, or for damage feasant, and impounded, but not before they are impounded. Thus, Gilbert on Replevins (Ed. 1757, pp. 61, 62) says: "'Tis to be observed that there are two things complained of in this writ, viz., the taking and detention of the pledges, as the words of the writ express it, quæ cepit et injuste detinet; but what is principally controverted in replevin is, whether the taking be just or not. For there are but two cases wherein a distress, justly taken, whether for rent or damage feasant, can be unlawfully detained. The first is, where the arrears of rent, or amends for the damage, are tendered to the party distraining; and this tender must be made before the beasts are impounded; for,

when the beasts are in the custody of the law, the person distraining cannot be said unlawfully to detain what is in the custody of the law."

2. When goods are distrained for fines, or taxes, or by way of execution upon convictions before inferior tribunals, they are in the custody of the law; as in Rex v. Burchet, 8 Mod. 208; Marriott v. Shaw, Comyn, 274; and Rex v. Monkhouse, 2 Strange, 1184, which were convictions under the game laws. Winnard v. Foster, 2 Lutw. 1191, where goods were taken by attachment, to enforce payment of the judgment of an inferior court. Aylesbury v. Harvey, 3 Lev. 204, where a silver cup was seized, upon a condemnation by justices of the peace, under the excise acts, for the non-entry of strong waters. Gins v. Dams, 2 Lutw. 1179, where cattle were taken by a warrant of two justices, for a poor rate; Clift, Ent. 636, for a militia fine; Lev. Ent. 152, on a conviction of fraud upon the excise; Lukin v. Eve, Moore, 89, for amercement in a court leet; Co. Ent. 570b, 572a, 573a; Fletcher v. Ingram, 5 Mod. 124; Stephens v. Haughton, 2 Strange, 847; Tott v. Ingram, 1 Brownl. & G. 185; Id. 189. So, for breach of a by-law, Winch. Ent. 90; 3 Wils. 155. So, for a poor-rate, Milward v. Caffin, 2 W. Bl. 1330. So, for a judgment of commissioners of sewers. Pritchard v. Stephens, 6 Term R. 522. These were all cases where the goods were clearly in the custody of the law, and yet there was no question that replevin would lie. In many of them the plaintiff recovered, and in all of them the causes appear to have been tried upon their merits, except the case of Rex v. Monkhouse, 2 Strange, 1184, where the court granted an attachment against the undersheriff for granting a replevin for goods seized under a conviction, by an inferior tribunal, for deer-stealing. It is a very short note of a case, and it does not appear whether the replevin was quashed, nor whether the officer was punished for the contempt. But in a preceding case (Rex v. Burchett, 1 Strange, 567), which was replevin for goods taken upon a distress, under the game laws, the court discharged the rule to show cause why an attachment should not issue against the officer who issued the replevin, and refused to set aside or quash the replevin (s. c. in 8 Mod. 208). The reason given for discharging the rule was, "that it was only a contempt to the inferior jurisdiction of the justices, and, in that case, the B. R. never interposes."

3. A third case, where goods are said to be in the custody of the law, is, where they have been seized in execution, upon a writ of fieri facias, or attachment issuing from a superior court. In this case, it is admitted, on all hands, that the debtor himself will not be permitted to replevy them out of the hands of the officer; but this cannot be on the ground that the goods are in the custody of the law, for they are equally in the custody of the law when distrained and impounded for rent arrear, or for damage feasant, or for taxes, or

for fines, or by way of execution of the judgments of inferior tribunals; and yet the books are full of cases of replevin for goods thus seized, and in custody of the law. It is only upon the ground of constructive contempts of court, out of court, that the superior tribunals in England have restrained the issuing of a replevin, where the debtor, or any party to a suit in those tribunals, has attempted to obstruct the execution of their judgments.

Thus, Gilbert on Replevins (161) says: "If a superior jurisdiction award an execution, it seems that no replevin lies for the goods taken by the sheriff by virtue of the execution, and if any person should pretend to take out a replevin and execute it, the court of justice would commit them for a contempt of their jurisdiction, because, by every execution the goods are in the custody of the law, and the law ought to guard them; and it would be troubling the execution awarded, if the party on whom the money was to be levied, should fetch back the goods by a replevin; and therefore they construe such endeavors to be a contempt of their jurisdiction, and, upon that account, commit the offender. But if any inferior jurisdiction issues an execution, a replevin will lie for the goods taken by that execution; because the inferior jurisdiction, being restrained within particular limits, the officer who took the goods is obliged to show that he took the goods within those limits; and that the inferior court, which issued the execution, did not exceed their authority in issuing it. Besides, an inferior court cannot commit for contempt out of the court; and hence it is that the officer of an inferior court is to show by what authority he took the goods. Thus, in a replevin the defendant was put to justify by a condemnation before a justice of peace for not entering of strong waters; and a warrant, on that, for levying 20s. fine on the plaintiff." Aylesbury v. Harvey, 3 Lev. 204.

The distinction here taken, between the proceedings of courts of superior and inferior jurisdiction, is very just, because every thing is presumed to be within the cognizance of a court of superior jurisdiction which is not clearly shown to be out of it; and nothing is presumed to be within the cognizance of the inferior tribunal unless clearly shown to be within it. Hence, prima facie the proceedings of a court of general jurisdiction are right; but those of a court of limited jurisdiction are wrong unless every thing appears upon the face of the proceedings which is necessary to give jurisdiction to the tribunal. Therefore, as the debtor is not bound to admit more than appears on the face of an execution issuing from a court of limited jurisdiction, and as such executions do not, on their face, show all that is necessary to support the jurisdiction, he is permitted to put the officer or the creditor upon the proof of that jurisdiction; and the means afforded him is a writ of replevin, to try the lawfulness of the distress, or of the caption of the goods. It is true that the

judgment and the execution of an inferior or limited tribunal, are as valid, in all matters within its jurisdiction, as those of a court of general jurisdiction; but the question, of jurisdiction of an inferior tribunal, is always open; and he cannot be "construed" to be guilty of a contempt, who only takes the usual legal means of trying the lawfulness of that seizure of his goods which has been made under the process of a court of doubtful jurisdiction. It is only where the issuing or the service of the writ of replevin can be punished as a contempt of the court from which the execution issued, that the books show that replevin will not lie for goods taken in execution. The books, however, are incorrect in saying that in such cases replevin will not lie. They only mean to say that the party serving the writ will be liable to attachment for his contempt in obstructing the execution of the judgment of the court, and that the court will, perhaps, quash the writ which is the means of that obstruction. The additional reason, therefore, given by Gilbert, is a sound one, why the rule is only applicable to goods taken by execution from the superior courts; to wit, that they only can punish for constructive contempts out of court. The ideas of Gilbert upon this point are strongly supported by Chief Baron Eyre, in giving his opinion in the case of Cawthorne v. Campbell, cited in Anstr. 206, 212. The question was upon the authority of the court of exchequer to remove into that court, from another court an action of trespass brought against the commissioners of excise. The chief baron placed the authority to remove the cause upon the ground of the action being a contempt of the prerogative of the king in relation to his revenue; and, in page 212, speaking of a case decided in the time of Henry the 7th, he says: "In this, they evidently proceeded upon a general analogy to the proceedings in other courts; for there is no court that suffers its process, either to be insulted, or to be materially interrupted; and whenever this is attempted, it is a contempt, upon which the court proceed to grant attachments in the first instance." "But that this jurisdiction is not a very novel thing, nor this a single instance, we may collect from other cases that are very clearly established; namely, that if a man, at this day, there being a seizure in order to condemnation, was to presume to replevy the goods, it would be a contempt of the court for which an attachment would be granted instantly." "So if a distress is taken for a fee-farm rent, or other duty to the crown, it is considered a contempt to replevy; and an attachment will issue upon it, as appears by the case of Rex v. Oliver, Bunb. 14." "Originally, therefore, it seems to me, that to call into question, or in any manner to interrupt the course of the prerogative jurisdiction, was treated as a contempt of the process of the court, and proceeded against immediately as such."

The only cases cited in support of the rule, that goods taken in execution cannot be re-

plevied, are cases of contempt; unless the loose dictum of Bacon in his Abridgment, tit. "Replevin," C. respecting Bradshaw's Case, and the dictum of Mr. Justice Powell, there referred to, can be called cases, when none of the facts of the cases are stated, nor any book referred to in which they can be found. Bacon says, upon his own authority, that "it was ruled, in the case of one Bradshaw, (T. 12, W. 3, in C. B.) that when an act of parliament orders a distress and sale of goods, this is in the nature of an execution, and replevin does not lie; but if the sheriff grants one, yet it is not such a contempt as to grant an attachment against him. And Powell, Justice, said, he remembered a case in the exchequer, where a distress was taken for a fee-farm rent due to the king, yet, upon debate in the court, no attachment was granted, though it was the king's case." In these cases there was neither an actual nor a constructive contempt of the authority of any court; for the first case supposes a distress and sale under an act of parliament; and the other was a distress for rent; when, therefore, it is said, that in such cases replevin will not lie, I understand the expression to mean no more than that replevin cannot be maintained. Thus, it is said generally, that replevin lies only for a wrongful taking; meaning that it can be maintained in such case only; not that it will not lie to try the question whether wrongful or not.

In the note in the new edition of Bacon's Abridgment (Phila. 1811, vol. 6, p. 56), it is said: "A replevin does not lie for goods seized by warrant of a justice of the peace upon a conviction for destruction of the game, &c. Semb. 2 Mod. Cas. 208, 209." This reference is, no doubt, to the case of Rex v. Burchet (B. R. 10 Geo. 1724), reported in 1 Mod. Cas. (8 Mod.) 208, 209, which was this: "One Burchett was convicted by a justice of peace for keeping dogs, nets, and ferrets to catch conies, not being qualified, &c. And by a warrant from the said justice, his goods were distrained for the forfeiture; and whilst they were in possession of the constable, and before they were sold, the town-clerk granted a replevin to take them from the constable. And now it was moved to set the replevin aside, because goods, thus taken by distress on such convictions, are irrepleviable; and for an attachment against the town-clerk. The court would not set aside the replevin; but made a rule to show cause why an attachment should not go." This case appears again in 1 Strange, 567, under the name of Rex v. Burchett, thus: "The court ordered an attachment nisi against the town-clerk of Guilford, and a defendant convicted on the game act, for granting and issuing out a replevin for goods distrained for the penalty; but on showing cause at the next term when Eyre, Justice, only was present, he discharged the rule, because it was only a contempt to the inferior jurisdiction of the justices, and, in that case, B. R. never interposes." This case, then, is a direct authority against the principle which it is cited to establish; for the court both refused

to quash the replevin and to issue an attachment of contempt for issuing it. There is also in the same edition of Bacon's Abridgment (volume 6, p. 56) this other note (a) to the Case of Bradshaw, there cited: "But now, in such cases, it is considered as a contempt for a party to replevy; and an attachment will issue upon it. Rex v. Oliver, Bunb. 14." I have not seen Bunbury's report of that case; but it is a case of a fee-farm rent due to the king, cited by Chief Baron Eyre, in the case in Anstruther, before mentioned. It was a prerogative case in the exchequer, and therefore gives no support to the rule respecting goods taken in execution from an inferior court; except, that it shows that contempt, and not mere custody of the law, is the ground of the rule. The note goes on further to say, that "replevin does not lie for goods distrained on a conviction for deer-stealing; and if a sheriff grants it, an attachment shall go against him. Rex v. Monkhouse, 2 Strange, 1184." The whole case in Strange is in these words: "The court granted an attachment against the under-sheriff of Cumberland for granting a replevin of goods distrained on a conviction for deer-stealing." This is the whole case; and yet it seems to be the principal authority upon which all the books rely to support the principle, that goods taken under an execution from an inferior court cannot be replevied; although in many preceding cases of that kind, as we have before seen, replevin was maintained. Mr. Durnford, in his note to the case of Pearson v. Roberts, in Willes, 672, in controverting the position of Chief Baron Gilbert, that replevin will lie for goods taken by an execution issued by an inferior jurisdiction, says, that "the two reasons given by Gilbert, by no means warrant it." "His first reason," says Mr. Durnford, "fails, if the officer took the goods within the limits of the particular jurisdiction, and if the inferior court did not exceed their authority in issuing the execution; in short, if it be a legal execution regularly executed." Surely Mr. Durnford could not mean to say that this is a reason why replevin should not lie to try the question, whether the goods were taken within the limited jurisdiction, and whether the court did not exceed its jurisdiction in issuing the execution. If he did, it is a petitio principii. As well might he say, that for goods lawfully taken as a distress for rent replevin will not lie, in order to try the question, whether lawfully taken or not.

The question which Gilbert was discussing, was not whether replevin could be maintained for goods lawfully taken in execution, but whether it will lie for goods taken in execution, whether lawfully or unlawfully; that is, whether the plaintiff will be permitted to commence that sort of action to try the lawfulness of the taking, and to get back his goods while that question shall be pending. Mr. Durnford's argument only goes to show, that the plaintiff would not be entitled to recover upon the trial, not that he might not commence the suit. "And with regard to the second reason," Mr. Durnford says, "it does not follow, because an in-

ferior court cannot commit for a contempt out of court, that therefore a replevin will lie; the want of authority to inflict one particular (and that an extraordinary) punishment for doing the thing, does not prove that the thing itself may be legally done."

Here is the begging of another principle; to wit, that the rule is not grounded, as Gilbert supposed, upon the doctrine of constructive contempts. If the rule be grounded entirely upon that doctrine, then the rule does not apply to those tribunals towards which there can be no constructive contempt. Mr. Durnford observes: "The only authority cited by Gilbert in support of this opinion, is the case of Aylesbury v. Harvey, 3 Lev. 204, of which," he says, "it is sufficient to observe, 1st, that this question was neither agitated at the bar nor decided by the bench; and 2d, that the judgment of the court was against the plaintiff in replevin." Now, it was because the question was not agitated nor decided by the bench, that Gilbert cited it as authority, that whenever the defendant in replevin justifies under the authority of a tribunal of limited jurisdiction, he must show that he took the goods within the limits, and that the inferior court did not exceed its jurisdiction; and that replevin will lie for goods taken under the authority of such a limited jurisdiction. For it will be seen, by the pleadings in that case, which are given at full length in Lev. Ent. 152, that the defendants had able counsel, and that their plea sets forth every particular necessary to give jurisdiction to the court, and to justify the caption of the goods; which particularity would have been unnecessary, if it were sufficient merely to show that the goods were taken under an execution issued by such a court. That such a point should not have been suggested, either by the bar or the bench, is strong evidence that such was not then the law. Mr. Durnford proceeds:—"But in opposition to this opinion" (of Gilbert) "may be placed Bradshaw's Case, 6 Bac. Abr. 55; Rex v. Sheriff of Leicestershire, 1 Barnard. 110; Rex v. Monkhouse, 2 Strange, 1184; and Rex v. Burchet, Id., note 1." The Case of Bradshaw has been mentioned before, as being very loosely reported. It merely states, "that a distress and sale, under an act of parliament, is in the nature of an execution, and replevin does not lie; yet the issuing of it is no contempt." The particular circumstances of the case, and the grounds of the decision are not stated, nor what effect the decision had upon the cause; whether to quash the writ, or to guide the jury in their verdict, or to arrest the judgment. So loose a case cannot be considered as entitled to any authority. The next case arrayed against the chief baron, is Rex v. Sheriff of Leicestershire, reported, as it is said, in 1 Barnard. 110. This case I have never seen. Mr. Durnford has not given us the substance of it; but it is sufficient to say, with Lord Kenyon (1 East, 642), "that Barnardiston was a bad reporter;" and with Lord Mansfield. (2 Burrows, 1142,) that "it was marvellous to those who knew the sergeant, and his manner of taking

notes, that he should so often stumble upon what was right; but yet that there was not one case in his book which was so throughout."

The next case, which is to put down the authority of Gilbert, is Rex v. Monkhouse, before mentioned, and reported in two lines and a half. These, and the Case of Burchet, said to be in a note to the case of Rex v. Monkhouse, in Strange, 1184, but which is not in my edition, and which, no doubt, is the case which I have already cited from 8 Mod. 208, 209, and Strange, 567, constitute the whole array, in opposition to the deliberate opinion of Gilbert, in a well considered treatise upon the subject, supported by the large number of cases already cited, and many more, which I have omitted to notice, in which replevin has been maintained for goods taken by way of execution of the judgments of inferior tribunals. Mr. Durnford, indeed, cites two cases which are against him, and endeavors to avoid their force. The fi st is Milward v. Caffin, 2 W. Bl. 1330, which was replevin for goods taken under a warrant of distress, by two justices of the peace, for poor-rates. The defendant justified under the statutes of 43 Eliz. and 17 Geo. II. as overseers of the poor; and judgment was rendered for the plaintiff. Mr. Durnford supp ses he evades the force of this case, by saying that the justices exceeded their authority; and that "the goods were not, in contemplation of law, taken under an execution." But that could not be ascertained until the trial; and it was to try that very question that the writ was issued and held to lie. If the justices had jurisdiction, the goods were taken under an execution; if they had not jurisdiction, they were not. This was the very point tried in the cause, and to try which the writ was issued; so that replevin will lie, whether the justices have jurisdiction or not. because it must lie before that question can be decided. The other case cited by Mr. Durnford is Pritchard v. Stephens, 6 Term R. 522, which was a rule to show cause why a replevin for goods taken under a warrant of distress, granted by commissioners of sewers, should not be quashed. The counsel in support of the rule, contended that the goods in question could not be replevied at all, and cited the following passage from Callis. 220, (a book which I have never seen:) "If, upon a judgment given in the king's court, or upon a decree made in this court of sewers, a writ or warrant of distringas ad reparationem, or of that nature, be awarded, and the party's goods be thereby taken, these goods ough. not to be delivered by replevin, to be taken either out of this court, or out of any other court of the king; because it is an execution out of a judgment." And the counsel stated, that Callis, in page 197, takes a distinction between those goods that remain in the custody of the officer under the seizure, and those that afterwards come into the hands of a purchaser, saying that the former are not replevisable; and that Callis also, in page

195, in distinguishing inferior from superior courts, says of the former, "a replevin doth not lie, and ought not to be granted from the sheriff, or any of his deputies, for that the sewer is a judicial court of record, and of greater authority than the power of the sheriff, which, in these cases, is but ministerial."

The counsel, on the other side, said, "It is not necessary to controvert the opinions of Callis, which have been relied on by the defendant; (though it might be shown, if necessary, that those opinions are not tenable,) because no judgment was in fact given by the commissioners of sewers." The court said, that, "at all events, this was a reason why they ought not to interfere in this summary way, by quashing the proceedings, but should leave it to the defendant to put his objection on record in a formal manner; and in the course of the argument, Lorn Kenyon, C. J., expressed very strong doubts respecting the opinions cited from Callis." The rule was discharged, and we have heard no more of the cause. These opinions of Callis, respecting which Lord Kenyon expressed such strong doubts, are the very opinions which Mr. Durnford attempts to support, in his note to the case of Pearson v. Roberts.

But it is not true, as Mr. Durnford alleged, that the only authority cited by Gilbert was the case of Aylesbury v. Harvey. He cited also the case of Winnard v. Foster, Lutw. 1191; Rast. Ent. 275, (probably a misprint for 553;) Brooke, Abr. "Replevin," pl. 22; 38 Eliz. III.,3; Lev. Ent. 152, all strongly supporting his opinion. The case of Winnard v. Foster, Lutw. 1191, was replevin for a cow, a stack of hay, and a pike of hay. The defendant made cognizance as bailiff of the sheriff, and set forth, in his cognizance, that the cow and hay were in the possession of one Nathaniel Day. That one William Dawson, at a county court of the said county, produced a writ of justices to the sheriff, by which he was commanded to justice the said Nathaniel Day that he render to the said William Dawson £14, which he owed him, &c., &c., stating, in a minute manner, all the proceedings in the county court; the levying the plaint; the summons delivered to the bailiff, and his return; the failure of Day to appear; the order for attachment by his goods, and the service thereof upon the goods in question as the goods of the said Nathaniel Day. The plaintiff replied, that, at the time of the caption, he was in possession of the cow and hay as of his own goods and chattels, and denied that Nathaniel Day was possessed of them as his goods and chattels at the time of caption; upon which traverse the issue was joined; and the jury found the issue for the defendant as to the cow, and for the plaintiff as to the hay: and the plaintiff had judgment for the damages and costs as to the hay, and the defendant had judgment for the return of the cow, and for his costs. This case shows that replevin will lie for goods taken by attachment from an inferior court; and that it was supposed, at least by the defendant's counsel, necessary to set out, in the plea, minutely, all the circumstances which gave jurisdiction to the court under whose process the defendant justified the caption. The ancient forms of entries and pleadings are evidence of the law.

Gilbert referred to Rastell's Entries, although the page (275) cited, is evidently a mistake, yet in folio 553, we find the form of an avowry for an amercement, or fine in the leet, hundred, or torn, in which everything necessary to show the jurisdiction is minutely set forth with all the circumstances of time, place, &c. He also referred to Lev. Ent. 152, which contains the pleadings at large in the case of Aylesbury v. Harvey, cited by him from 3 Lev. 204. He also referred to Brooke, Abr. tit. "Replevin," pl. 22, which contains an abridgment of the Year Book, 28 Eliz. III. 3, in these words (translated): "Replevin: the defendant avowed for this, that he had recovered 38s. in the court baron, by plaint there, and these beasts were delivered to him in execution of the judgment, and issue taken that they were not delivered to him in execution." These authorities, cited by Gilbert, are, to my mind, much more satisfactory in favor of his opinion than those cited by Mr. Durnford are against it.

It seems to me, very clearly, that the rule contended for, (to the extent to which it has been actually carried by adjudged cases,) is not founded upon the fact alone that the goods are in the custody of the law; but upon the right and duty of the court to enforce its judgment against the parties to the suit, and upon its power to punish, as for a contempt, any endeavor, by a party, to obstruct or defeat the execution. And I find my opinion strongly corroborated by that of the celebrated Maryland lawyer, Daniel Dulany, in the case, already alluded to, of Coursey v. Wright, in 1 Har. & McH. 394. The question, which he was discussing, was, whether Thomas Coursey could have brought replevin against T. Wright, while he, T. Wright, had possession of the property under his replevin against John Coursey. Mr. Dulany said, "I have little doubt but he might." "The transaction being inter alios, as it cannot affect the right, so neither can it affect the remedy, which is inseparable from the right. The cases in 8 Mod., Gilbert and Strange, proceed on a peculiar principle. When goods belonging to a defendant are taken in execution on fieri facias, or by distress on conviction, they being in the custody of an officer, acting under the mandate of authority, are in the custody of the law for the very purpose that justice may be done; but if the replevin, by the defendant, were allowable, the views of justice might be disappointed, and the very object of the judgment destroyed; but if the property of a stranger should be taken, it would be a wrong, and consequently the thing taken would not be in custody of the law. In the first instance it would be incongruous for the law to allow a process to defeat its ends:

but in the second, very agreeable to its principles that a man should not suffer an injury from the act of a stranger. Execution authorizes the officer only to make, or levy the debt or penalty, out of the chattels of the defendant; but in taking, for the purpose, the chattels of another person, he acts without authority. If the sheriff, on a fi. fa. against the effects of A, takes and sells the goods of B, the owner may sue him. 1 Burrows, 31. In replevin, if the plaintiff shows the cattle of a stranger for the cattle of J. D. and the officer takes them, he is a trespasser. 2 Rolle, Abr. tit. 'Replevin,' 431." "In case of distress for rent arrear, the goods, from the first taking, are in the custody of the law, and not merely in the distrainer (3 W. Bl. 146); but their being in this custody does not prevent the suit by replevin; on the contrary, the suit is most proper in the very instance. When replevin is brought, the defendant may defend his possession, if he has property, by the writ of de proprietate probanda. As he has the means to secure his possession, and as if the defendant in replevin should fail, the defendant may be entitled to a retorno habendo, it might be reasonable, (as full justice might be obtained without it,) to say that the defendant in replevin should not, during the pendency of the suit, bring replevin on his part, as it would tend to infiniteness. But the case of a stranger is very different. He cannot make himself party to the suit; entitle himself to the writ de proprietate probanda (2 Rolle, Abr. 431). or to a return, in any event of the suit. Not being provided for, or having the means of security afforded him on the suit, he consequently has a remedy by action against the possessor; for there cannot be an irremediable right; and it would shock the first principles of justice to allow that what A. B. may do shall deprive C. of his right. The true legal ground of replevin is the unjust taking and detaining of personal property; and of the remedy, that the owner may be specifically restored to it, and compensated for the injury from the unjust detention." "A denial of justice is injustice; suspension is deprivation for the time. Injury is not denominated from its degree." In Maryland, the opinions of Mr. Dulany, when deliberately given, have ranked almost, if not quite as high in the scale of authority, as cases adjudged in the highest tribunals of the state during his time. That which I have cited recommends itself to every reflecting mind by its sound sense combined with its sound law.

In the present case it is not necessary to decide whether replevin will lie for goods taken in execution issued by a court of limited or inferior jurisdiction, because the execution against Wells was from this court, which is a court of general jurisdiction. It became important, however, to investigate that doctrine, with a view to ascertain the ground upon which the rule rests, that goods taken in execution cannot be replevied, and

the extent of that rule. It is with that view only that the note of Mr. Durnford has been so minutely examined. With regard to the extent of the rule, I have found no adjudged case, except that of Cromwell v. Owings, 7 Har. & J. 55, in which the rule has been extended to a third person, whose goods have been taken out of his actual or constructive possession, to satisfy the debt of another person. All the cases of replevin cited in support of the rule, are cases in which the debtor himself was plaintiff in replevin. Such was Pearson v. Roberts, Willes, 672; Milward v. Caffin, 2 W. Bl. 1330, cited in Pearson v. Roberts, and all the cases cited in Mr. Durnford's note to that case, namely: Aylesbury v. Harvey, 3 Lev. 204; Bradshaw's Case, Bac. Abr. "Replevin," c.; Rex v. Sheriff of Leicestershire, 1 Barnard. 110; Rex v. Monkhouse, 2 Strange, 1184; Rex v. Burchet, Id. note 1; and Pritchard v. Stephens, 6 Term R. 522. So, also, were the other cases of replevin cited by the defendant's counsel in the case of Cromwell v. Owings, except the case of Ladd v. North, 2 Mass. 514, which was replevin by a third person; but no question was made whether it would lie. The case of Thompson v. Button, 14 Johns. 84, is decidedly against the rule in the extent contended for; because the replevin was sustained and judgment rendered for the plaintiff. But there the plaintiff was not the debtor in the execution, and the goods were taken out of the possession of the plaintiff. The case of Eaton v. Southby, Willes, 136, was a replevin by the vendee of the sheriff for corn sold under an execution against a former tenant, and distrained by the landlord for arrears of rent due from a subsequent tenant, the corn having been sold before it was reaped, and distrained after it was cut, and before it was fit, in the course of husbandry, to be carried away by the vendee. The question was, whether the corn could be distrained under those circumstances; and the court was of opinion that it could not, even if it had not been taken in execution, because the former tenant, being tenant at will, and his tenancy determined by his death, he had a right to keep the corn on the ground until, in the usual course of husbandry, it was fit to be carried away. The only part of that case applicable to the present, is the dictum "that goods taken in execution, or distrained for damage feasant, are in the custody and under the protection of the law, and therefore cannot be distrained for rent," which dictum, in regard to goods taken in execution, is not supported by the reference to Co. Litt. 47a.

The case of Alexander v. Mahon, 11 Johns. 185, cited in Cromwell v. Owings, was an action of trover, and was probably cited for a similar dictum, that goods, seized under execution, are in the custody of the law, and therefore not distrainable; and for the reason assigned. "For it is repugnant, ex vi termini, that it should be lawful to take the

goods out of the custody of the law." In that case the goods were lawfully taken in execution, and therefore were in the custody of the law; but it would be equally repugnant, ex vi termini, to say that goods unlawfully taken and detained, were in the custody of the law. The case of Palgrave v. Windham, 1 Strange, 212, was an action upon the case by a landlord against the officer who took the tenant's goods in execution, and removed them from the premises without paying one year's rent to the landlord; and I do not find in it any point or dictum applicable to the case of Cromwell v. Owings, in which it was cited. The case of Buxton v. Home, 1 Show. 174, was debt upon a judgment. The defendant pleaded that he was taken in execution and permitted to escape with the consent of the plaintiff, which plea was adjudged bad on demurrer. There seems to be nothing in that case applicable to the case in which it was cited, or to the present. The next case cited in Cromwell v. Owings, is Farr v. Newman, 4 Term R. 640, 651. The question, in that case, was, whether the sheriff, upon a fieri facias against the executor, for his own proper debt, could make the money out of the goods of the testator in the hands of the executor to be administered; and so force him to a devastavit, after notice by a creditor of the testator that he had judgment against the executor, de bonis testatoris, and an execution which he was about to levy on the same goods. It was an action upon the case against the sheriff for a false return of nulla bona testatoris upon that execution. The judgment of the court, (Buller, J., dissenting,) was for the plaintiff. The page 640, referred to in Cromwell v. Owings, contains a part of Mr. Justice Buller's argument against the opinion of the court; and probably the following passage was cited: "How is the sheriff to try any one of these questions? It should be enough for him that the goods are in the possession of the debtor, and used by him as his own. When the plaintiff's execution came to the sheriffs' hands they could not take these goods under it. The writ commanded the sheriff to levy the debt of the goods and chattels of the testator in the hands of Reid and his wife to be administered. These goods were not then in their hands, but they were in the hands of the sheriff, and in custodiâ legis; and in Holt, 643, and 1 Show. 174, it was resolved by Holt, C. J., that goods being once seized and in custody of the law, could not be seized again by the same or any other sheriffs." "So the sheriff cannot take goods which have been distrained. Tulley v. Peachey, Hill, 23; Geo. III." But to this Lord Kenyon, C. J., answered, in page 651: "As to the expression cited from Shower to show that goods once seized cannot be seized again, it must mean, when they are legally seized; for if any thing happen to disaffirm the first seizure, and to show that it was not legal, it is considered as no seizure in law; and the word seizure, is, in such a case, misapplied."

The case of Turner v. Fendall, cited from 1 Cranch [5 U. S.] 117, does not seem to have any bearing upon the case. Nor do the other cases of Ball v. Ryers, 3 Caines, 84, and Sturtevant v. Ballard, 9 Johns. 337. The case of Ilsley v. Stubbs, 5 Mass. 280, was replevin against a defendant who had obtained possession of the goods by replevin against a third person. The defendant pleaded that fact, and that his suit against the stranger was still pending. This plea was adjudged bad on demurrer. If there was any thing in that case applicable to the case of Cromwell v. Owings, it was against the party who cited it; for the judgment was in favor of the plaintiff in replevin against the defendant, who claimed protection under the rule, that the goods were in custody of the law, they having been delivered to him by replevin, and he having given bond to return them in case it should so be adjudged. But it is probable that it was cited for the dictum of Chief Justice Parsons, that "replevin lies for him, who has the general or special property in chattels, against him who has wrongfully taken them; but chattels, in the custody of the law, cannot, at common law, be replevied; as goods taken by distress upon a conviction before a justice, or goods taken in execution." "But if the goods are wrongfully taken by virtue of legal process, the remedy of the owner was by action of trespass or trover against the officer. For the common law would not grant process to take, from an officer, chattels which he had taken by legal process already issued; but the common law has, in this respect, been altered by the statute of 1789 (chapter 26, § 4). This statute authorizes the suing of a replevin against the officer for chattels which he has attached, or seized in execution, provided the plaintiff in replevin be not the debtor. This alteration of the common law has been productive of much practical inconvenience, but it must rest with the wisdom of the legislature to decide whether the common law, in this respect, should or should not be restored. As a general principle, the owner of a chattel may take it, by replevin, from any person whose possession is unlawful; unless it is the custody of the law; or unless it has been taken by replevin from him, by the party in possession." All this is mere dictum, not at all necessary to the decision of the question before the court. It has already been shown that goods, in the custody of the law, may be replevied; as in the case of goods distrained and impounded for rent. or damage-feasant, or for poor-rates, or for fines upon convictions before justices of the peace, and other inferior tribunals; and that in every case where it has been adjudged that goods taken in execution could not be replevied, the debtor himself was the plaintiff in replevin. But the chief justice, (for whom while living I had the highest

respect, and whose memory I revere,) proceeded to say: "If goods are wrongfully taken by virtue of legal process, the remedy of the owner was by action of trespass or trover against the officer." No goods can be taken by virtue of process which does not authorize the taking of them; nor can the process authorize a wrongful taking. Burnley v. Lambert, 1 Wash. [Va.] 308, 310, 312. If then the goods were wrongfully taken, they could not be taken by virtue of the process. The execution only authorizes the officer to take the goods of the debtor. If he take the goods of a stranger, he may take them under color of the execution, but not by virtue of the execution. If he took them by virtue of the execution he would not be a trespasser, which the chief justice admits he would be. Again, the chief justice says: "For the common law would not grant process to an officer, chattels which he had taken by legal process already issued." If the word "by" means "by authority of," then the taking by the officer was rightful; and if so, the proposition is correct as a proposition; but not as a reason why the owner of goods, wrongfully taken by the officer, should be confined to his action of trespass or trover. The chief justice further states that the common law in that respect was altered by the statute of Massachusetts which authorizes the suing of a writ of replevin against the officer for chattels seized by him in execution, provided the plaintiff in replevin be not the debtor. Of the correctness of that proposition I doubt. (1) Because it was never a rule of the common law, that goods, in the custody of the law, could not, for that reason alone, be replevied; as has been already shown. (2) Because no adjudged case has been found in the English books in which it has been decided, that a stranger to the execution could not maintain replevin against the sheriff for wrongfully taking his goods for the debt of another. (3) Because, at the time of the passing of the first colonial statute of Massachusetts, in 1641, the law was well settled in England, that, in many instances, where goods were in the custody of the law, they might be replevied; as in case of goods distrained and impounded, either with or without good cause. Co. Litt. 47b. Goods distrained for an amercement in a court-leet. Lukin v. Eve, Moore, 88. 10 Eliz., Anno 1567; Joyner v. Skype, Co. Ent. 570b; Pasc. 36, Eliz. Anno 1593, in communi Banco, Rotulo, 1260. And Lord Coke, in his preface, says: "That for thy further satisfaction, learned reader, every precedent hath a true reference to the court, yeare, term, number, roll, and record where the precedent is to be found." And Ashhurst, J., in Farr v. Newman. 4 Term R. 648, says that the form of proceedings and judgment "is of greater authority than even adjudged cases; because the writs and records form the law of the land." So, in Kingston v. Bayly, Co. Ent. 572a, Trin. 30, Eliz., Rot. 1012, C. B. Anno 1588; Hassell v.

Wilkes, Co. Ent. 573a, Mich. 8 Jac., Rot. 2119, Anno 1610; Godfrey's Case, 11 Coke, 43, Mich. 12 Jac., Anno 1614; Freeman v. Abbot of Ramsay, cited in 11 Coke, 43a, from the Year Book 10 Edw. III., fols. 9, 10, Anno 1336; Griesley's Case, 8 Coke, 38, Trin. 30, Eliz., Anno 1588; Porter v. Gray, Cro. Eliz. 245, Mich. 33, 34, Eliz., Anno 1591; Tott v. Ingram, 1 Brownl. & G. 185, 4 Jac., Anno 1606; Godfrey v. Bullein, 1 Brownl. & G. 189, 8 Jac., Anno 1610; Aylesbury v. Harvey, 3 Lev. 204; Lev. Ent. 152, S. C. 36, Car. 2, Anno 1684, for goods taken upon a conviction under the excise acts. Winnard v. Foster, 2 Lutw. 1190, Trin. 3 Wand. M. Anno 1691, for goods attached for a debt in the county court. Gins v. Dams, 2 Lutw. 1179, Hill, 9, Wm. III., Anno 1697, for goods taken under a warrant of two justices of the peace for non-payment of a poor-rate. Fletcher v. Ingram, 5 Mod. 127, Trin. 7 Wm. III., Anno 1695, for an amendment by a court-leet, for not serving as constable. Clift, Ent. 636, for goods taken by distress for a militia fine. And even as late as 4 Cro. 1, Anno 1718, in the case of Marriott v. Shaw, Comyns, 274, replevin was maintained for goods taken for a fine upon a conviction by a justice of the peace under the game acts. All these were cases of replevin for goods in the custody of the law, and yet no question was made whether replevin would lie, although brought by the debtors themselves. These cases, (and many more might be cited,) extend from the Year Book of Edward III., in 1336, to 4 Geo. I., in 1718, more than three and a half centuries.

The first case, which I find, in which the question was started whether replevin would lie in such cases, is that of Bradshaw, mentioned in Bac. Abr. "Replevin," C, as having been decided Trin. 12 Wm. III., in C. B., where "it was ruled, that when an act of parliament orders a distress and sale of goods, this is in nature of an execution, and replevin does not lie; but if the sheriff grant one, yet it is not such a contempt as to grant an attachment against him." But, as before observed, it does not appear whether the court quashed the replevin, or whether judgment was given upon demurrer to the avowry, or whether it was an instruction to the jury upon the trial. At all events it was a rule applicable only to one of the many cases in which goods may be in the custody of the law; and was a case in which the debtor was plaintiff in replevin. This case, however, was ruled in the year 1700. The first statute of Massachusetts on the subject of replevin, was passed in 1641; and as the law then was that replevin would lie in cases of distress by way of execution of the judgments of inferior tribunals, the statute of Massachusetts of 1641 was rather in restraint of the common law, than in enlargement of it, when it authorized replevin in all cases of "cattle or goods impounded, distrained, seized, or extended, unless it be upon execution after judg-

ment, or in payment of fines." The act of 1720. which excepts distress made by a proper officer for any tax, fine, or forfeiture, was but an affirmance, in that particular, of the statute of 1641. Whether the statute of 1641 was construed, by the courts, to except the case of goods of a stranger taken in execution, does not appear. From the words of the act itself, it would seem to be the most natural construction to confine the exception to goods of the debtor, taken on execution; because it says, 'after judgment." Against whom? The most obvious answer is, against the plaintiff in replevin. The 4th section of the act of 1789 (chapter 26) seems to corroborate this construction, for it takes for granted the right of the third person to replevy his goods wrongfully seized by the officer, and only regulates the manner and process, and designates the tribunal by which it shall be done. It says, "that when any goods or chattels shall be taken, distrained, or attached, which shall be claimed by a third person, and the person, thus claiming the same, shall think proper to replevy them," he may sue replevin from the common pleas, in the county where taken, distrained, or attached, and in a form prescribed in the act. 5 Dane, Abr. 517, 519. For these reasons, with great deference to the profound learning of the late chief justice of Massachusetts, I must doubt whether the statute of 1789 (chapter 26, § 4) altered the common law, in regard to the goods of a third person wrongfully taken in execution. It may, perhaps, be said that no such case is to be found in the English books, in which replevin has been maintained against the sheriff; and that, if "laid, as per schedule, and replevied," was a good return to a fieri facias, it would be found in the "Retorna Brevium." One answer, however, will serve for both those objections. In England, under the statute of Marlbridge (53 Hen. III. c. 21), the application for a replevin is to be made to the sheriff himself, who has the goods in his possession, under the fieri facias, and who, if a third person claims the property, has the power of summoning a jury of inquest to inquire to whom the property belongs. Dalton, 146; Gilb. Ex'ns, 21, cited in Farr v. Newman, 4 Term R. 633. If, upon that inquest, it be found for the third person, the sheriff will restore it to him, and be justified in his return of nulla bona upon the fieri facias, so that the whole purpose of replevin is thereby answered. If the jury should find that it is the property of the debtor, he may go on to sell it, and the finding will mitigate damages, in an action of trespass, if the goods seized should happen not to be the defendant's. Farr v. Newman, 4 Term R. 633. But, in this country, it has not been the practice of the marshal to summon a jury to try the question of property; if he has any doubt, he may require a bond of indemnity from the plaintiff. If the marshal here has no power to summon a jury to inquire of the property, justice seems to require that the owner should have his writ of replev-

in, if there be no positive rule of law to the contrary.

I have examined the dictum of the chief justice, in the case of Ilsley v. Stubbs, with the more minuteness, because it seems to be relied upon by the court of appeals in Maryland, as the main support of the dictum, in the case of Cromwell v. Owings, "that, in no case whatsoever, will replevin lie against an officer, for goods taken in execution under lawful process." This proposition extends to the case of a stranger's goods wrongfully taken out of the possession of the stranger himself, by an officer, to satisfy the execution against the debtor. The case of Cromwell v. Owings was that of a stranger's goods taken out of the possession of the debtor, and that was the only case decided. The general proposition, so broadly laid down by the court, was mere dictum. It is not authority, further than it was applicable to the case then before the court. That very respectable tribunal has taken the proposition to be universally true, that goods, in the custody of the law, cannot be replevied; and that goods, wrongfully taken by an officer of the law, under color of lawful process, are in the custody of the law, although the officer, in taking them, was guilty of a trespass, and although he is liable for damages for every moment that he detains them in that supposed custody of the law. This would, indeed, be an incongruity. There cannot be a wrongful custody of law. When goods are seized in the possession of the debtor, it may well be doubted whether replevin can be maintained; yet there does not seem to be any reason why it should not lie, (that is, be sued out,) to try the question of possession, at the time of the caption, as well as of title to the property. The possession may be equivocal, as in the case of Clark v. Skinner, 20 Johns. 465, where actual possession was in the debtor, but the right of possession was in the third person, the owner, the plaintiff in replevin. So, in Thompson v. Button, 14 Johns. 84, the goods were supposed by the court, to have been taken out of the possession of the plaintiff in replevin, and not of the debtor; and the court intimated a strong opinion, that if they had been taken out of the possession of the debtor, the replevin could not have been maintained. In the case of Clark v. Skinner, 20 Johns. 465, Mr. Justice Platt, who seems to have considered the case well, and who gave the reasons of his opinion very fully, said: "I am of opinion that replevin lies in favor of any person whose goods are taken by a trespasser. As to John Clarke, (the debtor,) the goods were in the custody of the law, and therefore irreplevisable; but, in my judgment, the law does not deny the remedy, by replevin, to any person whose goods are taken from his actual or constructive possession, by a wrongdoer." "The rule, I believe, is without exception, that wherever trespass will lie, the injured party may maintain replevin." "Baron Comyns says, replevin lies of all goods and chattels unlawfully taken;

(Com. Dig. 'Replevin,' A); though ('Replevin,' D) he says replevin will not lie for goods taken in execution." "This last proposition is certainly not true without important qualifications. It is untrue as to goods 'taken in execution,' when the fieri facias is against A., and the goods are taken from the possession of B. By 'goods taken in execution,' I understand, goods rightfully taken, in obedience to the writ; but, if through design or mistake, the officer takes goods which are not the property of the defendant in the execution, he is a trespasser, and such goods never were taken in execution, in the true sense of the rule laid down by Baron Comyns." "By constructive possession, I mean a right to reduce the chattel to immediate possession." And in page 470, he says: "The general rule is that the plaintiff must have a general or special property in him at the time of the unlawful taking, of which he complains; that is, he must either have the actual possession, or the right of reducing it to his actual possession, at the time of the tortious taking. If goods be taken on a fieri facias, as the property of the defendant named in the execution, and the writ is from a court of competent jurisdiction, and not void from any defect on its face, the officer, as against such defendant, is never a trespasser nor a wrong-doer. As to such defendant, the property is in the custody of the law, and he is precluded by the judgment against him." "But such reasoning has no application to the rights of a stranger whose property has been wrongfully taken on an execution against another person." "In every adjudged case that I have found, where it was held that goods 'taken in execution,' or goods 'in the custody of the law,' could not be replevied, that doctrine has been applied to cases where the defendant in the execution was plaintiff in the replevin."

In the case of Mulholm v. Cheney, Add. 301, the president of the court of common pleas in Pennsylvania, expressed the same opinion. In the above case of Clark v. Skinner, Spencer. C. J., and Woodworth, J., concurred with Mr. Justice Platt, but they rested their decision solely on the ground that the goods were to be deemed as taken from the actual possession of the plaintiff in replevin, who was not the defendant in the execution. The general rule, as before observed, is, that replevin will lie wherever trespass will lie for taking the plaintiff's goods. The facts necessary to maintain the suit, are, property in the plaintiff, either general or special, and a wrongful taking of the goods out of the plaintiff's possession, either actual or constructive. The possession must be such as would maintain trespass. If the original taking be lawful, or if the possession never was in the plaintiff, an unjust detention alone will not maintain replevin (Gardner v. Campbell, 15 Johns. 401; 2 Wheat. Selwyn, 896), unless attended by some act which would make the defendant a trespasser ab initio (Meany v. Head [Case No. 9,379]; 4 Bac. Abr. "Replevin," F). I am aware of the cases of Badger v. Phinney,

15 Mass. 359, and Baker v. Fales, 16 Mass 147, but am not satisfied that they can be supported upon principles of common law, however correct they may be, under the statutes of Massachusetts. "The whole personal property is liable to execution, except wearing apparel." "But the absolute property of those goods must be in the debtor; and therefore, if the sheriff takes the goods of a stranger, though the plaintiff assures him they are the defendant's, he is a trespasser, for he is obliged, at his peril, to take notice whose the goods are; and, for that purpose, may impanel a jury to inquire in whom the property of the goods is vested; and this, it is said, shall excuse him in an action of trespass. 2 Bac. Abr. C, 4; Keilw. 119, 120; Brooke, Abr. tit. "Trespass," 99; Dalt. Sher. 146; Brooke, Abr. tit. "Pledges," 28; Dyer, 67b, in margin. When no other person has the right of possession, the property draws after it the possession in law, and possession is implied in him who has the right of possession. Gordon v. Harper, 7 Term R. 12, 13; Ward v. Macauley, 4 Term R. 489. The books are full of authorities that trespass will lie against the officer who takes a stranger's goods in execution, either out of the actual or constructive possession of the plaintiff. Hallett v. Byrt, Carth. 381, where Lord Holt says: "There is a difference between replevin and other process of law, with respect to the officers; for, in the first case, namely, in replevin, they are expressly commanded what to take in specie; but in writs of execution the words are general, namely, to levy of the goods of the party, and therefore 'tis at their peril if they take another man's goods; for in that case, an action of trespass will lie." So, in the Year Book, 11 Hen. IV. 91, cited in 2 Rolle, Abr. 552: "If a bailiff of a court attach the party by the goods of another man, trespass lies against him, for he ought to take notice of the goods of the party." "So, if he attach the servant, by the goods of his master, being in possession of the servant. 11 Hen. IV. 90b, 91b. The law is the same, if the sheriff, upon an execution, takes the goods of a stranger." Wale v. Hill, 1 Bulst. 149; Coote v. Lighworth, Moore, 457; Thurbane's Case, Hardr. 323; Saunderson v. Baker, 3 Wils. 309, 2 W. Bl. 832; Bloxham v. Oldham, 1 Burrows, 26, note; Cooper v. Chitty, 1 Burrows. 30; Brooke, Abr. "Trespass," 135; 19 Hen. VI. 80; Ackworth v. Kempe, 1 Doug. 40; Cole v. Hindson, 6 Term R. 234; Shadgett v. Clipson, 8 East, 328; and Farr v. Newman, 4 Term R. 633.

In the present case of Williamson v. Ringgold, the simple question submitted to the court is, whether the mere fact that the defendant took and detained the goods of the plaintiff, under color of an execution against Wells, is sufficient ground to justify the court in quashing the replevin. The court must suppose the strongest case against the defendant, namely, that he took the goods from the possession of Williamson, the plaintiff in replevin. Being of opinion that it is a general principle of the common law, that replevin can be maintained in all

cases where the plaintiff's goods have been wrongfully taken from his possession, and that the exception of goods taken in execution applies only to the debtor himself, I think that the motion to quash the replevin, on the ground that the goods were in the custody of the law when the replevin was served, and also the motion for a venditioni exponas, ought to be overruled.

MORSELL, Circuit Judge, concurred. THRUSTON, Circuit Judge, dissented.