*THOMPSON ET AL. FOR THE USE OF DECALA vs. THE MISSISSIPPI MARINE AND FIRE INSURANCE COMPANY.*

APPEAL FROM THE COURT OF THE PARISH AND CITY OF NEW-ORLEANS.

A cause will not continue without the oath of the party that due dilligence has been used.

To support an allegation of the breach of warranty, a judicial sentence is not indispensable ; but to supply the want of it, other evidence must prove that the acts were illegal, and that forfeiture followed them, or would have followed them.

The introduction into Mexico of prohibited articles produces their forfeiture, but no penalty is inflicted on the vessel which carries them.

Illicit trade is that which is made unlawful by the laws of the country where it is to be carried to. That trade which the officers of the government may choose to designate as illegal to suit their own purposes, cannot be recognized as such by the tribunals of other countries.

A warranty against illicit trade is forfeited only by the vessel being engaged in an illicit trade, which renders her liable to seizure. If the illicit trade be not the ground, but only the pretext, there is no breach of warranty.

If on the vessel being seized the captain be thrown into prison, and on his being released makes immediate claim for her, and is threatened with death if he persist, he cannot be charged with negligence.

If the difficulty of recovering the vessel be great, and the prospect of getting her into possession so as to pursue the voyage feeble, an abandonment may take place.

This was a suit to recover as for a total loss, under a policy of insurance upon the schooner Rebecca and Eliza, on a

voyage from New-Orleans to Tampico. The policy contained the following clause : " Warranted by the assured free from any charge, damage, or loss which may arise in consequence of having been engaged in illicit or prohibited trade at any time whatsoever." The defendants resisted the claim upon the following grounds :

Eastern District,
*February* 1831

THOMPSON & AL
*vs.*
MISSISSIPPI MA-
RINE & FIRR·
INSUR. CO.

1. Because the captain, for whose use the suit was brought, caused to be shipped on board the vessel, a variety of merchandise which he knew to be contraband and prohibited by the Mexican government at Tampico.

2. Because upon his arrival at Tampico, he sold, or attempted to sell the prohibited cargo to the Spanish royal forces, then at war with the Mexican government, which was the true cause of the loss of the vessel—and, further, that he did not labor, sue for, and travel for the recovery and possession of the vessel, as he was bound to do by the terms of the policy. ·

It appeared from the testimony in the cause, that when the policy was subscribed, it was a matter of public notoriety, that the port of Tampico was in possession of a Spanish invading force, and that a proclamation of the commanding general, declaring the port free for provisions (with the exception of flour) had been published in the gazettes of New-Orleans—

That between the departure of the vessel from New-Orleans, on the second of September, and her arrival at Tampico on the fifteenth, the port had been retaken by the Mexicans, who hoisted Spanish colors to decoy in vessels that were laden with provisions—That the Rebecca and Eliza was seized by a military force, dismantled, and the captain and part of the crew imprisoned—That the vessel and her cargo, consisting of corn and other articles of provision, was sold at auction without any judicial proceedings—That the introduction into Mexico of prohibited articles produced *their* forfeiture, but not that of the vessel.

Eastern District, It further appeared, that the captain upon his release from
*February* 1831. prison, appled to the commander in chief for the restoration
THOMPSON & AL of his vessel, and was ordered, under the pain of death, to
*vs.*
MISSISSIPPI MA- desist from any further application.
RINE & FIRE
INSUR. CO.          When the cause was called for trial, the defendants moved
for a continuance on the ground, (unsupported by affidavit)
that a commission had not been returned although due dilli-
gence had been used in forwarding it to Tampico.  The
court overruled the motion, and the defendant took his bill of
exceptions.    There was a verdict and judgment for the
plaintiff, and the defendants appealed.

*Morse*, for appellants, made the following points:

1. The exception to the opinion of the judge *a quo*, refu-
sing to grant a continuance should be sustained, and the
cause remanded for a new trial.

2. The judgment of the court *a quo* should be reversed,
and judgment rendered in favor of the appellants for the
following reasons:

1. It is in evidence that the appellee has broken his cove-
nant of warranty in entering the port of Tampico with a con-
traband and prohibited cargo of provisions, for the purpose
of illicit trade.

2. That the seizure and detention of the vessel was the
consequence of such illegal conduct on the part of the as-
sured, and attributable to his fault, negligence, or miscon-
duct.

3. That the assured did not use the necessary precaution
in entering the port of Tampico, in attempting to ∙cross the
bar without a pilot, whereby the vessel was run ashore.

4. The assured did not labour or sue for the recovery of
the vessel as he bound himself to do, but abandoned the same
illegally, thereby converting a *partial* into a total loss, by his
own fault and negligence.   This is not a case of loss of
vessel or voyage that will authorize an abandonment.

*Preston*, contra:

Eastern District,
*February* 1831.

THOMPSON & AL.
*vs.*
MISSISSIPPI MA-
RINE & FIRE
INSUR. CO.

1. There was no intention on the part of the captain to engage in unlawful trade. He did not even know that the port was in possession of the Mexicans until the vessel was seized. To cause a forfeiture, there must be the intention to engage in illicit trade.—*2 Gallison,* 210, 211.—*Droit Maritime, art.* 1884.

2. If the unlawfullness of the trade ceases before capture, the vessel cannot be condemned.—*6 Robinson's Reports,* 390.—*2 Gallison,* 215, 216.—*3 Robinson,* 168.—*3 Mason's reports* p. 6.

3. The cargo, consisting of provisions, was not contraband of war ; 1st. Because Tampico was neither blockaded nor besieged—on the contrary, it was possessed by three thousand regular troops. The speedy capitulation of the invading army, though it occurred, could not have been anticipated. 2d. The provisions were not intended for the army exclusively, but for the inhabitants generally, whether natives or foreigners.

4. The progress of civilization has established as a principle of the law of nations, that provisions are not contraband of war, unless intended for the immediate relief of an army or navy, or blockaded or besieged town, put to the greatest straits by its opposing belligerent force.—*Wheaton on captures,* 178, 179, 180.—*Bynkeshook,* 68, 69, 73.—82.— *Azuni, vol.* 2, 146, 150.

This principle has been engrafted into most of the modern treaties, and particularly into those made by the United States, and the United States have invariably stipulated that the vessel should not be condemned, even if she had on board contraband goods.—*U. S. Laws, vol.* 7, *p.* 656.— *Colvin's Dig. Ibid,* 684.—*Laws U. S. vol.* 6, *appendix* p. 18. —*Ibid, vol.* 2, *p.* 483, 4.—*Ibid* 526.

5. It is urged in defence that the vessel was carrying provisions to Tampico, in contravention of the municipal regulations of the country. The case of Smith vs. the Insur-

Eastern District,
*February* 1831.

THOMPSON & AL
*vs.*
MISSISSIPPI MA-
RINE & FIRE
INSUR. CO.

ance Company, 6 Wheaton's Reports, shews the legality of trading with a port which is only temporarily open under insurgent authority, although in violation of the municipal regulations, that had been established in the country by the preceding government. The principle must be the same, if *vice versa*, the municipal authority is subverted by invasion. In the present case, the trade was not illicit as to the existing authority in Tampico, but was invited by the actual government, which, at the time, wore the aspect of considerable permanence. If the Mexican authority had existed, it is proved by many witnesses, that no law subjects the vessel to condemnation for carrying provisions there in violation of municipal regulations.

6. The vessel was not condemned by a judicial tribunal, but seized and disposed of by a military force. The constitution of Mexico and her treaties, show that regular maritime courts are established for the trial of all breaches of the commercial regulations of that country. Without a legal condemnation, the assured is presumed to be innocent of a breach of those regulations, and the capture and detention of his vessel unlawful. The insurers are, therefore, liable. 6, *Martin's Report, N. S. p.* 12, 14.

*Porter, J.,* delivered the opinion of the court.

The plaintiff's claims as for a total loss, under a policy of insurance upon the schooner Rebecca and Eliza, on a voyage from New-Orleans to Tampico. There is a warranty annexed to the policy freeing the assurers from any loss, damage or charge, which may arise in consequence of having been engaged in illicit or prohibited trade, at any time whatsoever.

The defendants pleaded their exemption from responsibility.

*Because* the captain, for whose use the suit is brought, suffered to be shipped on board the schooner a variety of

Eastern   District.
*February* 1831.

THOMPSON & AL
*vs.*
MISSISSIPPI MA-
RINE & FIRE
INSUR. CO.

merchandise, produce or provisions, which were contraband and prohibited by the Mexican government.

*Because* he attempted to trade or sell the same on his arrival at Tampico, to the royal forces then at war with the Mexican government.    In consequence of which, the vessel was exposed to seizure and condemnation by the laws of Mexico.

*And because* the plaintiff did not labour, sue for, or travel as he was bound to do by the terms of the policy, for the preservation, safeguard and recovery of the vessel.

During the late invasion of the republic of Mexico by the Spaniards, the port of Tampico fell into their possession, and the commander in chief issued a proclamation, declaring it free for provisions, with the exception of flour, which was made subject to a duty.    The plaintiffs, profiting by this permission, loaded the schooner named in the policy, and despatched her for that place.    Before she reached there the fortune of war had made it change masters.    The Mexican forces had recaptured it.    The Spanish flag, however, was still left flying, and served as a decoy to vessels which approached the harbour with cargoes of provisions. Deceived by it, the captain of the Rebecca & Eliza attempted to enter.    She was immediately seized.    The cargo was taken out and sold ; the captain and crew imprisoned, and the schooner herself disposed of by auction, under the sanction and by the direction of the Mexican authorities.

On these facts, quite novel in this court, and not very common any where, the present case  has arisen.    A number of points have been made, and the cause has been carefully argued.    We abstain from following counsel over the whole of the ground traversed by them, it is not necessary to do so, to arrive at a correct conclusion on the rights of the parties. Before we can reach the merits, a bill of exceptions, which stands in the way, must be disposed of.

On the 12th of December, 1830, a commission was ob-

Eastern District,
February 1831.

THOMPSON & AL
vs.
MISSISSIPPI MA-
RINE & FIRE
INSUR. CO.

tained by the defendants to take evidence in Tampico, re-turnable in forty days. Depositions were taken under it and returned into court on the 13th of February.

On the 17th of the same month, a rule was taken on the plaintiffs, to shew cause why a second commission should not issue. This application was supported by the affidavit of the president of the Insurance Company, who swore that the testimony of witnesses, whose names were unknown to him, was material in the defence. The court made the rule absolute, and directed the commission to be returned in six weeks.

The 11th of May, the cause came on for trial, and the defendants moved for a continuance, on the allegation (unsupported by affidavit) that the commission had not been returned, though due dilligence had been used in forwarding it. The court below refused to continue on this ground, and, in our judgment, did not err. The dilligence should have been shewn by affidavit, and the oath of the party ought to have afforded a reasonable prospect, through his belief of the fact, that the testimony sought for would hereafter be procured, and within a reasonable time.

A cause will not continue without the oath of the party that due dilligence has been used.

No judicial proceedings took place in relation to either cargo or vessel. They were taken possession of by military force, and sold without a decree of condemnation.

Whenever violence is used, and military authority is exercised on matters which, in all civilized countries, are the attributes of the civil power, a presumption is raised that the proceedings, even in their result, are not such as would have obtained the sanction of the law. The moral sense of mankind revolts so much at irregularities of this description, that the law is generally permitted to take its course, where it is believed the end sought for can be attained through it. In this instance, however, the defendants have rebutted that presumption in respect to the cargo introduced. The evidence on record satisfies us, that in a due

course of legal proceedings, the provisions found on board the vessel would have been condemned as contraband. But in relation to the vessel, a contrary conviction has been produced on our minds. There is a complete failure in the attempt to shew that the condemnation of the vessel was a legal consequence of the illicit trade in the cargo. Not only do *all* the witnesses interrogated on this point, disclaim any knowledge of the laws of Mexico, sanctioning such a proceeding:—one of them positively swears they do not authorize it.

As the presumption of correctness which, by the comity of nations, attaches to a judicial decree, does not extend to acts of military authority, where there is neither citation, hearing or sentence, it behooved those who claim exemption under those acts, to shew, that though irregular in their forms, they had the same result which a judicial proceeding would have had, or, in other words, to establish that the acts of the plaintiff were in contravention of the laws of the country, where the cargo was carried to. To support an allegation of the breach of warranty, a judicial sentence, is not indispensable, but to supply the want of it, other evidence must prove that the acts were illegal, and that forfeiture followed them, or would have followed them.

The evidence on the record exhibits a curious, and, what to many will appear, an imperfect legislation on this matter, by the republic of Mexico; but we are bound to decide the cause on the proof submitted. That proof establishes, that the introduction into Mexico of prohibited articles, produces their forfeiture, but that no penalty is inflicted on the vessel which carries them.

The seizure and sale of the schooner, in this instance, by the military commander of Tampico, was, therefore, in violation of the law of the country, and the question is, whether it was an illegal arrest and restraint by a foreign government, for which the defendants are responsible.

Eastern District,
*February* 1831.

THOMPSON & AL
*vs.*
MISSISSIPPI MA-
RINE & FIRE
INSUR. CO.

To support an allegation of a breach of warranty, a judicial sentence is not indispensable, but to supply the want of it, other evidence must prove that the acts were illegal, and the forfeiture followed them, or would have followed them.

The introduction into Mexico of prohibited articles produces their forfeiture, but no penalty is inflicted on the vessel which carries hem

Eastern District.
*February* 1831.

THOMPSON & AL
*vs.*
MISSISSIPPI MA-
RINE & FIRE
INSUR. CO.

They contend they are not, because the loss of the vessel was a consequence of the attempt to introduce, into the port of Tampico, articles prohibited by the laws of Mexico ; and this was a breach of the warranty by which it was covenanted, that the insurer should not be responsible for damage arising from illicit trade.

If the vessel was concerned in illicit trade, the plaintiffs cannot recover, and it becomes necessary, in examining the truth of this allegation, to ascertain what is illicit trade ?

We understand by it, all trade which is made unlawful by the laws of the country, where the object insured is bound to, or to be carried to. We know of no other definition, of which the terms are susceptible, that would be correct. That trade, which the officers of the government may choose to designate as illegal, to suit their own purposes, cannot be recognised as such by the tribunals of other countries. Such construction would afford temptations to acts of violence and fraud, and would be extending the meaning of the terms far beyond the contemplation of the parties. There being no judicial condemnation in this instance, the illegality of the trade and the legality of the seizure and sale in consequence of it, must be judged of by the court on the laws produced to us.

Now it has been shewn, that the laws of Mexico do not make it illicit for a vessel to carry contraband goods. The penalty attaches alone to the merchandise introduced. No forfeiture is incurred by the ship. Her arrest and detention were, therefore, unlawful, as much so as if she had entered the port with goods that might be legally carried there. We can see no difference in the cases.

But it was further urged that the covenant of warranty is a condition precedent to the right of recovery, and though the loss may not have been incurred by that breach, the plaintiffs cannot recover.

This is true, provided *there was* a breach of the war-

*Illicit trade is that which is made unlawful by the laws of the country where it is to be carried to. That trade which the officers of the government may choose to designate as illegal to suit their own purposes, cannot be recognized as such by the tribunals of other countries.*

.anty. But to what does that warranty extend ? Certainly
to nothing else but that which formed the object of insur-
ance. If, indeed, the plaintiff had procured insurance from
the defendants, on both vessel and cargo, and committed a
breach in respect to either, these might be grounds for ap-
plying the principle invoked on the argument, because it
made a part of the contract that no illicit trade should be car-
ried on in relation to either. But the plaintiffs only cove-
nanted against losses arising from his engaging in illicit
trade with the vessel. Under the proof adduced to us, we
have shewn she was not in the commission of an unlawful
act. If the plaintiffs took on themselves the risk of the car-
go, or if they insured it with another office, the defendants
have no concern with the illegality or legality of introducing
it into the country it was carried to. The stipulation in
the warranty extends only to the subject matter of the insur-
ance, which was the schooner ; and if she could lawfully
carry the cargo, there was no breach of the warranty in her
doing so, no matter what became of it.

This matter is susceptible of further developement, and
as the case is of the first impression, we are desirous of ex-
pressing our views on it so fully, that we cannot be misunder-
stood. The words of the warranty are, "free from any da-
mage or loss which may arise in consequence of having been
engaged in illicit or prohibited trade." If reason alone
was resorted to for the interpretation of this clause, it might,
perhaps, conclude, that whether there was illicit trade or
not was immaterial, provided no loss was incurred by it,
and that the insurer ought not to be permitted to protect
himself against the responsibility of the other risks in the poli-
cy which occasioned damage, by alleging a non compliance
with matters that had no agency in producing this damage.
If the thing was *res integra*, it might, perhaps, be thought, and
justly thought, that as the words of the instrument made the
insured warrant the insurer against *any loss* from illicit trade,

Eastern District
*February* 1831.

THOMPSON & AL
*vs.*
MISSISSIPPI MA-
RINE & FIRE
INSUR. CO.

it was sufficient for the former to shew that *no loss* had been incurred by it. But whether reason would sanction this conclusion or not, it is certain authority gives a much more extended effect to this clause in a policy of insurance. It holds promises of warranty as conditions precedent to the right of recovery, and hence it becomes immaterial what produces the loss, provided the condition is not complied with. The books abound with examples of this kind. They are so numerous it is unnecessary to cite them.

When engagements of this description exercise such an extensive influence on the rights of the insured and insurer, frequently too by a sacrifice of the equity of the case, it is important not to extend them to acts out of the contemplation and intention of the parties to the contract. We have already seen the vessel was not lost by being engaged in illicit trade : her seizure and sale were acts of violence of which that was the pretext. The defendants are, therefore, responsible, unless they can establish a breach of warranty, unconnected with the loss ; or in other words, a non compliance with some condition which the plaintiff should have performed. They contend they do so, by shewing the plaintiff carried on an illicit trade in provisions to Mexico. But it appears to us, they might as well select any other act of the petitioners lives, and make it a failure of a condition precedent on which the right of recovery depended. If, indeed, that trade in provisions, furnished ground for the legal condemnation of the vessel, there would be a breach of the warranty. For we understand the clause in the policy to mean, that the assured shall do no act of illicit trade that will expose his vessel to be legally condemned.—*2d Cranch Rep.* 232, 234. So long as he avoids acts of this description, the insurers have nothing to do with his illegal conduct in other matters. They are totally foreign to the contract ; are neither expressed by its letter, nor embraced by its spirit.

A warranty against illicit trade is forfeited only by the vessel being engaged in an illicit trade, which renders her liable to seizure. If the illicit trade be not the ground but only the pretext, there is no breach of warranty.

We, therefore, think the plaintiffs are entitled to recover, but before we conclude, there is another point made by the defendants, which it is necessary to examine. They contend, that the abandonment was made too soon, and that the plaintiffs did not travel, labor, and sue for the recovery of the property, as they were bound to do.

The last objection is easily disposed of. The captain was arrested and thrown into prison on the vessel being seized; as soon as he was liberated, he applied to the commander in chief to have the vessel restored. He was ordered to desist from the application, and threatened to be shot if he did not. Under these circumstances, with the experience the captain already had of the violence and tyranical conduct of the authorities at Tampico, we think he was justified in making no further efforts to obtain possession of his schooner. We would doubt much, if the members of the company, under similar circumstances, would have urged their solicitations any further.

The objection as to the time of abandonment, is not, in our judgment, more solid. It is shewn the vessel was stripped of her rigging and dismantled, and rendered incapable of being navigated back, unless the articles taken from her had been restored. It is also in evidence, that she was since sold by the person who seized her.

An abandonment is a right given to the insured, to turn that into a total loss which would not otherwise be so. What circumstances, short of a total loss, will authorize it, has been a source of a diversity of opinion. Much depends on the degree of injury actually sustained, and upon the situation in which the ship is placed by the peril. If it is one of danger—if the difficulty of recovering her be great, and the prospect of getting her into possession, so as to pursue the voyage feeble, the authorities fully sanction the right to abandon. Such, we think, was the situation of the schooner protected by this policy. We cannot distinguish the case

*Margin notes:*

Eastern District, *February* 1831.

THOMPSON & AL *vs.* MISSISSIPPI MARINE & FIRE INSUR. CO.

If on the vessel being seized the captain be thrown into prison, and on his being released makes immediate claim for her, and is threatened with death if he persist, he cannot be charged with negligence.

If the difficult, of recovering the vessel be great and the prospect of getting her into possession so as to pursue the voyage feeble, an abandonment may take place.

Eastern District
*March* 1831.

THOMPSON & AL
*vs.*
MISSISSIPPI MA-
RINE & FIRE
INSUR. CO.

before us from a very modern one, in which it was held the plaintiffs were entitled to recover.—See 4 *Maule and Sel wyn* 576. See also *Benecke on Ins.* 362, 2 *Burrowes* 68£, 3 *Cranch* 357, 4 *Cranch* 45, 2 *Mason*, case of *Peele vs. Merchants Ins. Co., Phillips on Ins.* 390 *to* 393—3 *Kent's Com.* 265.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be affirmed with costs.