FLANAGAN AND CARPENTER *vs.* THE CAMDEN MUTUAL INSURANCE COMPANY.

1. At common law, an action will not lie upon a policy of insurance in the name of the assignee.

2. But if upon a transfer of the premises insured, the vendor assigns his policy to the purchaser, and this is assented to by the insurer, it constitutes a new and original promise to the assignee, upon which an action may be maintained in his own name.

3. Upon fire policies, the insurers are not liable beyond the amount of damage actually sustained by the insured. Their contract is, not that they will pay the amount insured upon the building, if destroyed by fire within the period of insurance, but that they will indemnify the assured against all loss which he may sustain by reason of the fire.

4. Such contract is a mere contract of indemnity, upon which no action of debt can be maintained, whether the contract be by deed or by parol.

5. An objection to the form of the action is matter of substance, and may be taken advantage of upon general demurrer

On demurrer to narr.

John Flanagan and George W. Carpenter brought an action against the Camden Mutual Insurance Association, on a policy of insurance, made by the defendants to one James Stewart, and assigned by said Stewart to the plaintiffs.

The declaration is in debt. It sets out a policy of insurance under seal, made and executed by the defendants to one James Stewart, on the 26th June, 1851, of $1000 for one year, on a certain dwelling house in Camden against loss by fire, in consideration of a deposit of four dollars. The policy stipulates, among other things, that if during the time mentioned, the said house should sustain damage or loss by fire, they would compromise or agree with the party insured for the amount of the loss, and pay the same to him, or with all convenient speed proceed to repair, rebuild, or replace such loss or damage; and that in case of dispute the difference should be submitted to arbitration, &c. And further, that in case of a transfer of the property, either by death, sale, mortgage, assignment,

or otherwise, the policy should cease and terminate from the time of such transfer, unless the owner or persons holding a mortgage on the same, and an assignment of the policy, should apply for a continuance of the policy within thirty days from the date of such transfer, and become liable, as a member of the association, for all losses which might accrue by reason of such insurance; and with the further proviso, that the policy might be renewed. The declaration then alleges that Stewart was, at the time of the making of the said policy, and until he assigned the same, interested in said property to the amount of $1000; that, on the 26th June, 1851, said Stewart, with his wife, mortgaged the said property to the plaintiffs, and at the same time assigned to the plaintiffs all his right, title, and interest in the said policy, and all the benefit and advantage to be derived therefrom; that the plaintiffs applied for a continuance of the policy within thirty days; that the defendants did continue it, and the plaintiffs became members of the association, and liable for losses, &c., and that the defendants approved of the assignment of the policy; that, in consideration of the premium received and the assignment, and the plaintiffs undertaking to do and perform all things in the policy contained on the part and behalf of said Stewart to be done and performed, the defendants undertook and promised, and became insurers to the plaintiffs for the said sum of $1000. Then the declaration sets out that, on the 24th June, 1852, for and in consideration of five dollars premium, to the defendants then and there paid by the plaintiffs, the defendants undertook and renewed the said policy for $1000 for one year then next ensuing, according to the regulations of the constitution and by-laws of said association, which will appear by an endorsement and memorandum in writing made by the defendants on the back of said policy, &c.; and, in the same form, sets out two further renewals, to wit, on 19th June, 1853, for

$5 premium, $1000 for one year from that date, and on 23d January, 1855, for $7.50 premium, $1000 for one year from that date; and the undertaking and agreeing of the defendants to keep them insured, &c., the plaintiffs being all the time interested to the amount of $1000 in said property, and members of the association, and liable for losses, &c., by reason of which the defendants became liable, &c. Then alleging the burning, notice, and request, &c.

To this declaration the defendants demur, and insist — 1, that the plaintiffs have not shown such right, title, or interest in said policy as authorizes them to sue as assignees thereof; 2, that the policy is not assignable, so that an action can be maintained in the name of the assignees; and 3, that the action, if maintainable at all, should be in assumpsit, and not in debt.

Argued, November term, 1855, before the CHIEF JUSTICE, and ELMER, POTTS, and HAINES, Justices, by *Carpenter*, in support of the demurrer, and *Dudley*, contra.

*Carpenter*, for demurrer.

1. An action will not lie on a policy of insurance in the name of the assignee. 5 *Wend.* 292; 1 *Johns. Ch. R.* 463, *Carter et al.* v. *The United Ins. Co.*; 2 *Comst.* 53, *Bodle* v. *The Chenango Co. M. Ins. Co.*; 3 *Denio* 305.

2. A policy of insurance is not assignable under our statute; the statute applies only to contracts for the payment of money. *Rev. Stat.* 801; *Spencer's R.* 579.

3. This action cannot be maintained upon any promise which appears on the face of the declaration. An action of debt will not lie on a contract to pay money or do some other act; assumpsit is the only action that will lie. 2 *Saund.* 626 (*note 5*).

No action will lie in this case, because it does not appear that all the interest of Stewart has been assigned to the plaintiffs; the amount of the mortgage held by the

plaintiffs is not stated. *Phillips on Ins.* 83, 84; 3 *Metc.* 66, *Wilson* v *Hill;* 16 *Peters* 502, *Carpenter* v. *Prov. Ins. Co.* The rules of the company, set out in the declaration, state that, within thirty days after the transfer, the party must apply and become a member. The plaintiffs did not become insured to the amount of $1000, as set out in their declaration, but only to the amount of their mortgage; they must set out that the whole interest was transferred to them. 6 *Halst.* 327, *Ford* v. *Campbell.* Where there is an extension by a parol agreement, assumpsit only will lie.

*Dudley,* contra.

Our statute authorizes an assignment. *Rev. Stat.* 801–2. If these plaintiffs cannot maintain an action, no one can. The person insured is not a member of the company; the assignees alone are members, and they are liable to assessments. The whole interest being assigned, the assignees must recover the whole. If Stewart has a claim on the policy, it must be enforced against the assignees. 2 *Phillips on Ins.* 591, § 1971; 5 *Wend.* 200, &c anger v. *Howard Ins. Co.; Dura* v. *Mut al Ins. Co..* 4 *Zab.* 171; 2 *Phillips on Ins.* 592, § 1974.

*Carpenter,* in reply.

There is no doubt that an action will lie where the whole interest has been transferred, and a new contract made. The plaintiffs have not set out that they have the whole interest.

The CHIEF JUSTICE. This action is founded on a policy of insurance against loss or damage by fire, made by the defendants under their corporate seal, bearing date on the twenty-sixth of June, 1851. The defendants are incorporated on the principle of mutual insurance. The plaintiffs are mortgagees of the premises insured, and assignees of the policy. The assignment is under seal, and is ap-

proved by the secretary, according to the rules of the company. The original policy continued but for one year, I aving expired on the twenty-sixth of June, 1852. The declaration avers, that it was thrice subsequently renewed, according to the by-laws of the company; that the term of the first renewal expired on the twenty-fourth of June, 1853, and of the second renewal on the twenty-fourth of June, 1854; that it was renewed a third time, on the twenty-third of January, 1855, for the term of one year, and that within that year, viz., on the twenty-eighth day of February, 1855, the building insured was destroyed by fire; that the premium upon each of the renewals was paid by the assignees; that, by such assignment and continuance of the policy, the plaintiffs became members of the association, and, as such, liable for all losses that might accrue by reason of such insurance; and that, in consideration thereof, and of the plaintiffs undertaking to do and perform all things in the policy contained on the part of James Stewart (the party originally insured) to be done and performed, the defendants undertook and promised, and became insurers to the plaintiffs for one thousand dollars. The plaintiffs further aver, that at the time of the insurance, and at the time of the loss by fire, the plaintiffs were interested in the premises to the amount of one thousand dollars, being the full amount of insurance thereon, and that they sustained damage, by reason of the fire, to the amount of one thousand dollars.

To the declaration there is a demurrer.

The first ground of demurrer is, that the action cannot be brought in the name of the assignee of the policy. The familiar principle of the common law is, that a chose in action is not assignable, so as to vest by the assignment a right of action in the assignee. A policy of insurance does not constitute an exception to the general rule. It has been repeatedly adjudged that an action on a policy of insurance will not lie in the name of the assignee. The

suit must be brought in the name of the parties originally insured, and they will not be suffered to prejudice or defeat the right of action. *Marshall on Ins.* 696 ; *Carter* v. *The United Ins. Co.*, 1 *Johns. Ch. R.* 463 ; *Granger* v. *The Howard Ins. Co.*, 5 *Wend. R.* 200 ; *Jessel* v. *The Williamsburg Ins. Co.*, 3 *Hill* 88 ; *Howard* v. *The Albany Ins. Co.*, 3 *Denio* 301.

To avoid this difficulty, the charters of many modern insurance companies contain a clause, that the assignee of a policy, having the same confirmed to him, " shall be entitled to all the rights and privileges, and be subject to all the liabilities, to which the original party to whom the policy issued was entitled under the act." This clause authorizes an action on the policy assigned in the name of the assignee, and is so far an alteration of the rule of common law. *Ferris* v. *The North American Fire Ins. Co.*, 1 *Hill* 71 ; *Mann* v. *The Herkimer Co. Ins. Co.*, 4 *Hill* 187 ; *Bodle* v. *The Chenango Co. Mutual Ins. Co.*, 2 *Comstock* 56.

The charter of the Hudson County Insurance Company (§ 7) contains substantially the same provision, and that clause was relied upon by counsel to sustain an action in the name of the assignee of a policy against the company. *Durar* v. *Insurance Co.*, 4 *Zab.* 178, 183. The charter of the defendants contains no provision of similar character. *Pamph. Laws* 1840, *p.* 125.

The case is not affected by the " act concerning obligations, and to enable mutual dealers to discount." The provisions of that act, authorizing scrolls by way of seals, and empowering the assignee of bills, bonds, and other writings obligatory for the payment of money to maintain an action in his own name, are limited to instruments for the payment of money only. *Nix. Dig.* 542 ; *Hopewell* v. *Amwell*, 1 *Halst.* 169 ; *Perrine* v. *Cheeseman*, 6 *Halst.* 178.

But the plaintiffs do not rest their right of action upon the bare ground that they are the assignees of the policy. They count upon the assent of the defendants to the assign-

ment, and upon a promise by them to insure the plaintiffs against loss. The general rule is, that actions for the breach of personal contracts must be brought in the name of the assignor, except where the defendant expressly promised the assignee to respond to him. *Innes* v. *Dunlop*, 8 *Term R.* 595; *Fenner* v. *Meares*, 2 *Blac. R.* 1269; *Wilson* v. *Coupland*, 5 *Barn. & Ald.* 228; *Mowry* v. *Todd*, 12 *Mass.* 281; *Compton* v. *Jones*, 4 *Cowen* 13; *Dubois* v. *Doubleday*, 9 *Wend.* 318; *Chit. on Con.* (9th ed.) 537.

This principle, as applied to the assignment of policies of insurance, is thus clearly stated by Chief Justice Shaw, in *Wilson* v. *Hill* 3 *Metc.* 69: " If on a transfer of the estate, the vendor assigns his policy to the purchaser, and this is made known to the insurer, and is assented to by him, it constitutes a new and original promise to the assignee, to indemnify him in like manner, whilst he retains an interest in the estate ; and the exemption of the insurer from further liability to the vendor, and the premium already paid for insurance for a term not yet expired, are a good consideration for such promise, and constitute a new and valid contract between the insurer and the assignee. But such undertaking will be binding, not because the policy is in any way incident to the estate, or runs with the land, but in consequence of the new contract." See, also, *Carroll* v. *The Boston Marine Ins. Co.*, 8 *Mass.* 517; *Lynch* v. *Dalzell*, 4 *Bro. P. C.* 497; *The Sadler's Co.* v. *Badcock*, 2 *Atk.* 554.

If the plaintiffs were the purchasers of the premises insured, and held the entire interest of Stewart, to whom the policy was originally given, and had the fire occurred during the unexpired term for which the insurance was originally effected, the case would fall directly within the authority of the cases cited. The counsel of the defendants was understood as admitting, that if the plaintiffs held the entire interest of Stewart in the land, and the exclusive right to the whole amount covered by the in-

surance, their right to maintain an action in their own names could not be gainsaid.

There are certainly questions of serious difficulty and embarrassment growing out of the claims of mortgagee and mortgagor, for indemnity against a mutual insurance company, where the policy has been assigned as collateral to the mortgage. But however embarrassing these questions may prove when they fairly arise, it is not perceived that they in any way affect the question in this cause. The case made by the declaration is, that the plaintiffs are the absolute owners of the policy of insurance; that it was assigned to them as mortgagees of the property; that, at the time of the assignment and at the time of the loss by fire, they had an insurable interest in the premises equal in amount to the sum of one thousand dollars, the entire amount of the policy; that when the policy was renewed, the company entered into a contract of insurance with the plaintiffs (not the mortgagor); that they paid the premium; that they became members of the association, and, as such, clothed with all the rights of the party originally insured, and liable, as members of the association, for all losses which might accrue by reason of such insurance. If this be the true state of the facts, (and upon them the plaintiffs' right of recovery is based) the party originally insured had ceased to be a member of the association, and by the terms of the charter, could not be a party insured. The term for which he had insured his interest had expired; he had made no deposit upon the renewal of the insurance; he was not liable for losses; there was no mutuality of loss or advantage between him and the members of the association. Under such circumstances, he can have no right to recover in a court of law, either directly or through the agency of these plaintiffs. The contract of insurance is a personal contract with the assured, enures to his benefit only, not to the benefit of the mortgagor. On the contrary, upon the payment of the

debt to the mortgagee, the underwriters are entitled to an assignment of the debt from the mortgagee, and may recover the same amount from the mortgagor. *Carpenter* v, *The Prov. Wash. Ins. Co.*, 16 *Peters* 501.

If the facts set forth in the declaration are sufficient to establish the existence of a contract, upon which the plaintiffs can maintain an action in a court of law, it must be a contract directly between the plaintiffs and the company, and not between the company and the party originally insured. It cannot be that the renewal of the policy operated to extend the contract in favor of Stewart, the party originally insured. If it did, the plaintiffs could derive no benefit from the contract, for it is not pretended that there was any new assignment; and the assignment of the original policy, could not operate as a transfer of the new contract. In *Evans* v. *Thompson* 5 *East* 189, it was held that a parol agreement, endorsed upon bonds of submission to arbitration, to enlarge the time for making the award, virtually includes all the terms of the original submission, as if the same had been formally set forth and repeated in the parol agreement. And upon the same principle, the parol agreement to continue or renew the policy entered into with the assignee, must be held to be a virtual renewal, in his favor, of the original contract, with all its terms and conditions. Assuming this to be the true interpretation of the contract, it is clear that the assignees may maintain an action in their own names. They sue, not upon the original policy under seal, but upon a new parol agreement made directly between the defendants and the plaintiffs.

But it is further objected that the action is misconceived, and that an action of debt cannot be maintained upon the contract set out in the plaintiffs' declaration. This objection raises two questions, viz. first, whether an action of debt will lie, in any case, upon a policy of insurance not under seal; second, whether debt can be sustained

upon the policy which forms the subject of the present action.

The books very generally state the rule to be, that if the contract be not under seal, the remedy is assumpsit; if under seal, the remedy is debt or covenant. *Ellis on Ins.* 90; *Angell on Ins.* § 355; *Annesley on Ins.* 4J; 1 *Chit. Pl.* (*7th ed.*) 125, 132; 2 *Ibid* 179, *note q*; 2 *Saund. on Pl. & Ev.* 592. And the precedents will be found to be in correspondence with this statement of the principle. 2 *Chit.* 178, 429, 536; 1 *Went.* 470; 3 *Went.* 386, 403, 410; 7 *Went.* 38. The cases of precedents in debt upon policies are very rare, and are principally, if not exclusively, confined to valued policies upon ships and cargo. I find no precedent of a declaration in debt upon a fire policy, and no precedent of a declaration in debt upon any policy not under seal.

The authorities cited in support of the principle, that an action of debt will lie upon a policy under seal, show that that form of action was authorized by *Stat.* 6, *Geo. I. ch.* 18, under which two companies were incorporated for the assurance of ships and merchandise at sea. *Marsh. on Ins.* 596.

Although the books appear to confine the action of debt exclusively to policies under seal, it is not supposed that, in principle, that circumstance can affect the form of the remedy. If the nature of the demand be such as to sustain the action, it is immaterial whether the contract be by deed or by parol, express or implied. Provided the certainty of the sum appears, and the plaintiff is to recover the sum *in numero*, and not to be repaid in damages, the action of debt may be sustained irrespective of the form of the contract. *Buller's N. P.* 167; 1 *Chit. Pl.* 123–4. Debt will lie against a corporation for the recovery of a debt or sum certain, in all cases where assumpsit will lie. 1 *Chit. Pl.* 125. The real question is, whether the claim of the plaintiff be for a sum certain, in the nature of a debt, or merely for damages for breach of a contract.

Upon fire policies, the underwriters are not liable beyond the amount of damage actually sustained by the plaintiff. If the party insured disposes of his interest in the building prior to its destruction by fire, he is entitled to recover nothing upon the policy, though the loss be total, because he has sustained no damage. The underwriters are bound to make satisfaction to the party insured for the loss he has sustained. Their contract is not, that they will pay one thousand dollars if the house is destroyed by fire within the period of insurance, but that they will indemnify the insured against all loss which he may sustain by reason of the fire. *Lynch* v. *Dalzell*, 4 *Brown's P. C.* 432 ; *The Sadler's Co.* v. *Badcock*, 2 *Atk.* 554 ; *Carpenter* v. *The Prov. Wash. Ins. Co.*, 16 *Peters* 503.

The strongest view that can be taken in favor of the action of debt, as an appropriate remedy, is that the contract is in the nature of a valued policy ; that the house, having been insured for one thousand dollars, and the loss being total, the sum which the plaintiffs are to recover is ascertained by the parties. But even upon a valued policy, the amount specified is only *prima facie* evidence of the real value. It is open to the defendants to prove that, in point of fact, the articles insured were worth less than the value at which they were insured. *Marsh.* 201.

In case of a partial loss of the property, or the sale of part by the owner, where the insurance is in his favor, or a partial payment on a mortgage, when the insurance is effected by the mortgagee, it is clear that the value of the property cannot fix the measure of damages. They are in their nature unliquidated, and cannot, therefore, be recovered in action of debt.

In *Long* v. *Long*, 1 *Hill's R.* 597, it was held that an action of debt will not lie for the breach of a sealed contract to pay a note, and save the plaintiff harmless and indemnified therefrom, when the amount of the note does not

appear in the contract. Bronson, J., in delivering the opinion of the court, said, " the agreement is special, and is in effect a covenant to indemnify and save harmless. The damages are unliquidated. It is true that debt will sometimes lie when the certainty of the sum has to be made out by averment; but not, I think, on a covenant of indemnity." That case is decisive against the plaintiffs' right to sue in debt in the present instance; but it goes much further than is necessary to sustain the defendants' objection.

Whatever doubt may exist upon this question as applied to the ordinary contract of insurance, I think there can be none in regard to the policy on which the present action is founded. Its terms are peculiar. After insuring one thousand dollars upon the building, the contract proceeds as follows: " But on condition of loss or damage by fire in or upon said building, the directors shall either compromise and agree with the insured for the amount of such loss or damage sustained, and pay over to the assured the amount of such agreement, or otherwise they shall, with all convenient expedition, proceed to repair, rebuild, or replace such loss or damage as it was, or as near as may be of the same value as it was before such loss or damage occurred. This clearly is not a covenant to pay liquidated damages. The covenant is express, that the damages are either to be ascertained, or the building to be restored to its former condition. The breach is, that the defendants did neither. The strongest interpretation which can be given to the language of the contract, laying out of view its alternative character, is that the underwriters covenant to indemnify the assured for all damages or loss which they may sustain by reason or means of fire happening to the property insured, not exceeding the sum specified in the policy. If this be the true meaning of the contract, it is a mere contract of indemnity against unliquidated or unascertained damages, for which

no action of debt can be maintained, whether the con tract be by deed or by parol. The pleader has attempted, in his declaration, to meet this aspect of the contract, for he avers not only that the building was insured for one thousand dollars, and that it was destroyed, but he avers that, by reason of the fire, he sustained damage or loss to the value of one thousand dollars. That is a distinct material averment, and must be proved upon the trial. *Ellis on Ins.* 94.

The error in the form of the action is not assigned specially as a ground of demurrer. The objection, how- ever, is not a matter of form, but of substance, and may be raised upon general demurrer, or may be taken advan- tage of in arrest of judgment or upon writ of error. 1 *Chit. Pl.* 226.

The demurrer is allowed.

POTTS, J.    The policy of insurance set out in the de- claration is not a writing obligatory for the payment of money only, and is not assignable, so as to enable the as- signees to bring an action of debt in their own names by virtue of the " act concerning obligations, and to enable mutual dealers to discount." *Rev. Stat.* 801, § 2 ; *Richard- son* v. *Beaumont, Spencer* 578. Nor is such an instrument assignable at common law, without the consent of the in- surers. *Angell on Life and Fire Ins.* 8, § 11. And though assigned with the consent of the insurers, the action could not at common law be brought in the name of the assignee, unless the insurers had expressly promised to respond to him. *Jessel* v. *Williamsburgh Ins. Co.,* 3 *Hill* 88, and cases there cited. But " if the underwriter has agreed to account and make payment to an assignee, the latter may, at common law, commence proceedings in his own name, where nothing remains to be done on the part of the assignor, and all his interest in the contract has thenceforward entirely ceased. If the assignment, taken

in connection with the policy, plainly transfers the assignor's whole interest, the underwriter's assent to it is equivalent to an agreement to be directly answerable to the assignee. In such case the proceedings to enforce payment may be in the assignee's name, and he becomes to all intents and purposes the substituted party to the contract." 1 *Phillips on Ins.* § 83, 84. There is no good reason why this should be otherwise. There is nothing in such an agreement contrary to public policy. It is but saying that parties are at liberty to make their own contracts ; and when not illegal the law will give effect to them according to the intention of the contracting parties, as expressed in the instruments they have executed.

But in this case the right of the assignees to maintain an action in their own name, does not rest solely on the assignment of all Stewart's interest in the policy, and the assent of the defendants to the assignment. In the first place, the defendants agreed with the plaintiffs to continue the contract of insurance for the benefit of the plaintiffs until the expiration of the first year ; when the year expired, in consideration of a premium paid to them by the plaintiffs, they renewed the policy, thereby expressly, by a new contract, insuring them for another year ; and so, for a new consideration and by new contracts of renewal, reinsured them for two successive years afterwards. It is upon the last of these renewals that the action must be maintained. The prior contracts had terminated by their own limitation ; they were each for a single year. Upon the last contract the plaintiffs have clearly a right of action, taking the allegations of the declaration as true. It sets out this contract of insurance, and the consideration paid for it ; alleges that the plaintiffs were interested in the premises insured to the amount of the insurance at the time of the loss, the destruction of the buildings insured, notice, &c.

Objection is taken to this mode of alleging interest, but,

it is in conformity with settled precedents. 2 *Chit. Pl.* 110 (1825), and *note (m)* 2 *Phil. on Ins.* § 2012; *Ellis on Ins.* 90.

It is not necessary, however, to look particularly into the declaration in reference to matters of form. The action is misconceived; it should be in assumpsit, not in debt. The contract of renewal is not alleged to be, and I presume was not, under seal. The contract was to rebuild, repair, or pay the amount of damage within the limits of the sum insured and the plaintiffs' interest in the premises. The effect of the new agreement or contract of renewal, made on the 23d January, 1855, was virtually to incorporate in it, by reference, all the stipulations and conditions between the parties contained in the original policy, as if they had been formally set forth and repeated. *Ford* v. *Canfield*, 6 *Halst.* 327. The contract is in the nature of an indemnity, (*Ellis on Ins.* 1) given by the insurers against such loss or damage by fire, as may happen to the insured in respect to his building covered by the policy. This is an open policy. The contract is to pay the insured the amount of damage he may have sustained, not exceeding one thousand dollars. The sum is inserted, by way of limitation merely, as the utmost amount of damage to which the company can, in any event, be held liable, not a contract to pay that sum absolutely in case of a total loss, as it would be upon a valued policy. The demurrer does not admit the amount of damage, (*Mansell on Dem.* 111, 26 *Law Lib.* 74); and upon an interlocutory judgment and writ of inquiry, the plaintiff would have not only to prove the total loss, but damage to the amount of one thousand dollars, and that he had an insurable interest to that amount, or he could not recover the whole sum. In case of a valued policy it is different, for there it is a part of the contract that the property insured is valued at the amount insured (2 *Arch. N. P.* 143, 50 *Law Lib.* 159); and in case of a total loss, it

is not necessary for the plaintiff to prove the value of the property : it is for the defendant to impeach it, and to show, if he can, that the value was so trifling as to make the policy in law a mere wagering policy ; and in an action on such a policy, if the defendant allow judgment to go by default, he will thereby admit the plaintiff's title to recover ; and the amount of the damage being fixed by the policy, the jury, upon the execution of a writ of inquiry, must assess the damages at the full amount of the defendant's insurance. *Thellerson* v. *Fletcher*, 1 *Douglas* 315 ; 2 *Arch. N. P.* 160.

But this being an action upon an open, not a valued policy, though a total loss is alleged, the insured, I repeat, can only recover according to the amount of damage he may be able to prove he has actually sustained. *Rhinelander* v. *Ins. Co. Pa.*, 4 *Cranch* 44. It is an action brought upon a parol contract for the recovery of unliquidated damages. In England, the action upon sealed policies was formerly invariably brought in covenant ; but an action of debt was given by the statutes, 6 *Geo. I, ch.* 18, § 4, *and* 11 *Geo. I, ch.* 30, § 43 : and since that time debt has sometimes been brought instead of covenant, both in England and in this country, where the contract was under seal. But where the contract is not under seal, assumpsit is the proper form of action to be brought upon it against the insurer. *Ellis on Ins.* 91 ; 1 *Chit. Pl.* (*ed.* 1825), 94, 98, and debt is not maintainable, 1 *Chit. Pl.* 105, 106 ; 2 *Saund. Pl. & Ev.* 229, 230, (*ed. of* 1851).

I concur in allowing the demurrer.

ELMER and HAINES, Justices, concurrred.

CITED in *Bayles* v. *Ins. Co.*, 3 *Dutch.* 164; *State Ins. Co.* v. *Maackens*, 9 *Vr.* 566.